## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LIEBLER, and GREG CAREY, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>LG ELECTRONICS U.S.A., INC., a Delaware corporation,<br><br>*Defendant*. | Case No. 14-CV-03500-JLL-JAD |

## AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs David Liebler ("Liebler") and Greg Carey ("Carey") (together, "Plaintiffs")

bring this Amended Class Action Complaint and Demand for Jury Trial ("Complaint") against

Defendant LG Electronics U.S.A., Inc., ("LG" or "Defendant") based upon the false marketing

of its smartphones. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as

to themselves and their own acts and experiences and, as to all other matters, upon information

and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.     In an effort to increase sales, LG—one of the world's leading manufacturers of

smartphones that run the "Android" operating system[1]—misrepresents the storage capacity of its

---

[1]     An "operating system" ("OS") is software that manages a computer's hardware components and myriad of software programs. *See* Francis M. Allegra, Daniel B. Garrie, *Plugged In: Guidebook to Software and the Law* § 2:5 (Feb. 2014). The "Android" operating system was developed by Google and is currently the most widely used operating system for smartphones. *See Android - Meet Android*, http://www.android.com/meet-android/ (last visited July 14, 2014).

smartphones ("LG Phones").[2]

2.    According to LG, its smartphones let consumers "watch movies on Netflix, shoot and share HD video and browse the web" and "browse" and download "thousands of apps." [3]

3.    To demonstrate to consumers the "thousands of apps" its phones can download, LG advertises that its LG Phones have a sizable amount of "internal" storage and that consumers can supplement that space through "external" storage cards.[4]

4.    However, a close inspection of the LG Phones (following their purchase) reveals that the storage space advertised by LG is far from what consumers get. As for LG's "internal" storage, it turns out that consumers have access to as little as 11% of the storage LG advertises. This substantial discrepancy is a result of several limitations LG has placed on its phones, such as the pre-loading of dozens of unwanted applications onto the LG Phones that take up as much as 30% of the advertised storage.

5.    It's a similar story for LG's "external" storage. LG advertises that its LG Phones support the addition of "up to 32 GB" in external storage cards. In actuality, LG placed a significant limitation on the external storage cards' use—specifically, LG engineered the phones so that Apps can never be stored onto the cards. Unfortunately, LG hides that fact from

---

[2]    "LG Phones" specifically refers to the following LG phone models: Optimus L9, Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, Motion 4G, or L35G. The representations and omissions regarding the storage capacities of the LG Phones are substantially the same, are presented in a nearly identical manner, and harm consumers in a substantially similar manner. From a reasonable consumer's perspective, while other features may vary from phone to phone, LG places the same limitations and makes the same assertions regarding their storage capacities regardless of the model name.

[3]    "Apps" refer to the mobile applications and videogames that smartphones running the Android OS can download from the Google Play virtual retail store.

[4]    Internal storage is a fixed amount of memory that houses the operating system along with other files and media. External storage is a feature that allows for an optional and removable storage card (*e.g.*, a Secure Digital or "SD" card) to supplement internal storage.

consumers.

6.      In the end, a detailed breakdown of all of LG's restrictions shows that consumers are left with as little as 0.4% of the overall (*i.e.*, internal and external) advertised storage capacity for their LG Phones. Accordingly, this putative class action lawsuit seeks (i) to prevent Defendant from continuing to misrepresent the capacity of its smartphones' storage, and (ii) damages for those deceived into purchasing the smartphones under false pretenses.

## PARTIES

7.      Plaintiff David Liebler is a natural person and citizen of the State of Michigan.

8.      Plaintiff Greg Carey is a natural person and citizen of the State of Kansas.

9.      Defendant LG Electronics U.S.A., Inc. is a corporation incorporated in and existing under the laws of the State of Delaware with its principal place of business located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LG does business throughout the United States and State of New Jersey, including in this District.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

11.      This Court has personal jurisdiction over Defendant because it conducts business in this District, is headquartered and registered to do business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant

resides in this District and the events underlying this action occurred here.

## FACTUAL BACKGROUND

### I.      A Brief Overview of LG and Android Smartphones.

13.     Founded in 1958, LG is one of the world's largest designers and manufacturers of smartphones that run the "Android" operating system.

14.     The Android OS, engineered by non-party Google Inc., provides the LG Phones with the ability to play music and videos, access the internet, and importantly, to work with more than a million Android applications ("Apps").

15.     Apps can be downloaded and installed from the "Google Play" virtual retail store operated by Google, and can range from a few megabytes in size to several gigabytes.[5] Apps are very popular amongst consumers—in 2013 alone, consumers spent over $1.2 Billion on Apps from the Google Play store.[6]

16.     Knowing that consumers demand access to Apps, Defendant engineered its LG Phones to access the Google Play store. In Defendant's words, its LG Phones "provide[] easy integration with Google[TM] apps and widgets, and/or allow[] [consumers] to browse thousands of apps [] from games and books to camera flashes and coupons."[7]

17.     Unfortunately, and as explained more below, LG severely limits the number of Apps that consumers can install by providing phones with storage capacities inconsistent with its advertised amounts.

---

[5]      *Android Apps Break the 50MB Barrier | Android Developers Blog*, http://android-developers.blogspot.com/2012/03/android-apps-break-50mb-barrier.html (last visited July 14, 2014).

[6]      *Android Operating System Statistics - AppBrain*, https://www.appbrain.com/stats/ (last visited July 14, 2014).

[7]      *Android Phone, learn more* http://www.lg.com/us/android-phones ("Learn More" hyperlink).

**II.    LG Misleads Consumers and Omits Important Information About Its Smartphones' Internal and External Storage.**

18.    Throughout its marketing, LG specifies the "internal" and "external" storage capacities of its LG Phones. A closer examination shows, however, that LG only affords consumers a small share of the advertised "internal" storage and blocks consumers from using the "external" storage for one of the primary purposes of the LG Phones: the storage of Apps.

*1.    LG misrepresents its LG Phones' internal storage, leaving consumers with less than 11% of what is advertised.*

19.    Android smartphones, including the LG Phones, contain a fixed amount of "internal" storage to store Apps (along with other files and media). A smartphone's "internal" storage refers to one or more memory chips that physically reside within the device.[8] Typically, the internal storage holds the operating system along with system and application files (*i.e.*, Apps), music, photos, and more. While LG advertises the purported internal storage capacities of its LG Phones, a detailed breakdown of those figures reveals that they are grossly overstated.

20.    On its websites, LG advertises the internal storage capacities for its phones, listing its phones' "TECHNICAL SPECIFICATIONS" and, more specifically, their "Total Internal Memory."

21.    For instance, LG states that its Optimus F3 has "1.24 GB" (*i.e.*, 1.24 gigabytes) of internal storage space (*i.e.*, "Internal Memory") available.[9] (*See* Figure 1, on the following page.)

---

[8]    A memory "chip" is a "piece of semi conductive material such as silicon" that "holds data for access at a later time." Francis M. Allegra, Daniel B. Garrie, *Annotated Glossary*, Plugged In: Guidebook to Software and the Law Glossary (Feb. 2014).

[9]    *LG Optimus F3 Smartphone with 4.0" | LG USA*, http://www.lg.com/us/cell-phones/lg-LS720-Titanium-Silver-optimus-f3 (last visited July 14, 2014).



(**Figure 1.**)

22.     And for its Optimus L9, LG specifies that it has "4 GB" of internal storage.[10] (*See* Figure 2*.*)



(**Figure 2.**)

23.     Similarly, LG engineered all of its LG Phones to display the amount of "Internal memory" (*i.e.*, internal storage) that is available for use. Under the "Settings" function within the smartphones, LG Phones show their "Total" and "Available" "Internal memory" (*i.e.*, internal storage) capacities.

24.     For example, Figure 3 shows a display screen on an L35G model LG Phone listing "1.00GB" of "Total" and "Available" "Internal memory."



(**Figure 3.**)

25.     However, and as explained in greater detail below, LG's advertised storage capacities are inaccurate as a result of three of LG's design decisions. First, LG pre-fills as much as 30% of its LG Phones' internal storage with unwanted Apps. Second, by default, LG forces Google Play Apps to use a small subset of internal storage. And third, LG Phones always reserve 10% of advertised internal storage for their own use.

26.     To start, LG pre-fills its LG Phones' internal storage by installing dozens of

---

[10]     *LG Optimus L9 P769 Technical Specifications | LG USA*, http://www.lg.com/us/cell-phones/lg-P769-optimus-l9/technical-specifications (last visited July 14, 2014).

unwanted Apps. On nearly every LG Phone, LG selects a number of Apps (sometimes 60 or more[11]) from its business partners, installs them on the LG Phones, and blocks users from ever deleting them.[12] These undeletable Apps often take up more than 30% of LG's advertised internal storage.[13]

27.   Next, LG designed its phones so that user-installed Apps are installed onto just a small fraction of the advertised internal storage space. For example, LG engineered the L35G so that Apps are installed to a storage location that LG refers to as "System memory." (*See* <u>Figure 4</u>.)



(**Figure 4**, showing 148MB (or 0.148GB) of "System memory.")

28.   Notably, the L35G's 0.148GB of "System memory" is much smaller than the "1 GB" of internal storage advertised by LG. Yet LG only advertises its phones' "1 GB" of internal storage and does not disclose that it programmed its phones to install Google Play Apps onto the markedly smaller "System memory."

29.   LG similarly limits the internal storage space for its Optimus L9. Specifically, while LG represents that the Optimus L9 has "4 GB" of internal storage, it does not inform

---

[11]   *South Korea Cuts Bloatware, Tells Samsung & LG to Let Us Delete It | Digital Trends*, http://www.digitaltrends.com/mobile/south-korea-bloatware-must-be-deletable/#!G1vuV (last visited July 14, 2014).

[12]   Apps that are pre-installed on smartphones are commonly known as "bloatware," and result from the phone's manufacturer entering into contractual agreements with third-party App developers. Each time a phone is sold with the App developer's App pre-installed, the manufacturer profits.

[13]   *Revealed: The storage 16GB mobile phones REALLY come with - and Samsung offers just HALF of its advertised space | Mail Online*, http://www.dailymail.co.uk/sciencetech/article-2545258/Samsung-Galaxy-S4-owners-just-HALF-storage-paid-bloatware.html (last visited July 14, 2014).

consumers that the majority of that figure is not usable. <u>Figure 5</u> shows that the Optimus L9 actually provides only "1.6GB" of "Internal storage"—60% less than the "4 GB" advertised.



(**Figure 5.**)

30.     In addition to pre-installing apps and making a majority of internal storage inaccessible, LG also secretly reserves at least 10% of internal storage for its own use. Every Android phone requires an amount of internal storage space reserved for the operating system (the "OS Reserve"). LG designed its LG Phones so that 10% of the internal storage is allocated for the OS Reserve. (*See* <u>Figure 6</u>.)

> **1. Phone memory**
> When available space in your phone memory is less than 10%, your phone cannot receive new messages. You need to check your phone memory and delete some data, such as applications or messages, to make more memory available.

(**Figure 6.**)

31.     Unbeknownst to consumers, LG doesn't account for the OS Reserve in any of its advertised internal storage figures. For example, while LG states that the L35G provides 148MB of "System" memory, in reality, consumers can only ever use up to 133MB of storage (*i.e.*, 148 megabytes minus the 10% OS Reserve).

32.     From the above analysis, it is evident that LG has shortchanged consumers. Rather than receiving the "Available" internal storage as advertised, consumers typically receive less than 11% of what they were promised—which means consumers have almost 90% less internal storage to download and install Apps. While consumers may be able to "browse thousands of apps" on their LG Phones, LG's limitations mean that they can only store a few.

> *2.     LG removes the ability to store Apps on external storage and conceals that fact from consumers.*

33.     Throughout its LG Phones' websites, packaging, and owner's manuals, Defendant

represents that the LG Phones can utilize "up to 32 GB" in external storage. What LG doesn't say is that its LG Phones' external storage is effectively useless because LG has blocked any Apps from being installed onto it.

34.     LG designed all of its LG Phones to have a slot that accepts physically small and removable Secure Digital ("SD") memory cards, commonly referred to as "external" storage. The removable external SD cards act similarly to internal storage in that they are able to store any type of data. In fact, the primary purpose of the LG Phones' external storage is to seamlessly expand upon the phones' limited internal storage.

35.     Consumers reasonably expect that they can store any type of data on the external storage, including Apps. This expectation was created in part because LG previously advertised that its LG Phones allowed for the storage of Apps on external SD cards. In many instances, LG even placed instructions on how to "save [Apps] to the [SD] card" within the LG Phones' owner's manuals. (*See* Figures 7 and 8.)

| Phone Function | microSD Card | Is it possible to save applications to the microSD card? | Some applications can be saved to the microSD card.<br><br>1. From the Home screen, touch the **Menu Key** ▣ > Settings > Applications > Manage applications.<br><br>2. Touch an application > Move to SD card. |
|---|---|---|---|

(**Figure 7**, showing the LG Revolution's owner's manual from 2011.)

| Phone Function | microSD Card | Is it possible to save applications to the microSD card? | 1. From the Home screen, press the Menu Key ▣ and touch Settings > Applications > Manage applications.<br><br>2. Touch an application, then touch Move to SD card. |
|---|---|---|---|

(**Figure 8**, showing the LG Optimus M's owner's manual from 2010.)

36.     Since 2012, however, LG has quietly removed references regarding "savi[ng] [Apps] to [SD] cards" from its LG Phones' manuals. While LG has removed such references, it

has yet to add any express limitations on the use of its LG Phones' external storage. For

example, LG continues to represent on its website that the LG Phones all have an "[SD] Memory

Slot [that] Supports up to [a] 32 GB memory card"—without limitation.[14] (*See* Figure 9.)

| MicroSD™ Memory Slot | Support up to 32 GB** |
|---|---|

(**Figure 9.**)

37.     Defendant makes similar representations on the LG Phones' physical packaging.

The L35G's packaging, for example, prominently states that it supports "External microSD™

Card[s] up to 32GB" *and* that it "Includes … [a] 4GB microSD™ Memory Card." (*See* Figure

10.)



(**Figure 10.**)

38.     Hidden from all of its representations, though, is that LG now expressly blocks

Apps from being installed onto external SD cards. Defendant's omission of this fact is

significant. As noted above, consumers expect to store data—especially Apps—onto their

external SD cards, without limitation. LG fostered this expectation by previously advertising that

its LG Phones allow for the storage of Apps on external storage. And unfortunately, when LG

changed course by blocking the external storage of Apps, it simply didn't tell anyone. Thus,

consumers—especially returning LG customers—had no way of knowing of this limitation

before they purchased the LG Phones.

---

[14]     The asterisks found in Figure 8 do not disclaim the ability to move Apps to the SD cards,
they instead link to text that explains that "MicroSD™ cards [are] sold separately."

39.     As a result of LG's inaccurate and incomplete representations, consumers were (and still are) tricked into buying phones thinking they can store "up to 32GB" of any type of data, such as Apps and games. In reality, LG designed its phones so that consumers have as little as *0.4%* of the advertised space available.[15] The reason LG doesn't accurately list the vastly smaller storage capacities in its advertising and marketing is clear: if consumers knew that the LG Phones could only hold several hundred megabytes (or less) of Apps—which is equivalent to as few as *one App*—they would pay less for the phones or not buy them at all.

**III.     Plaintiff Liebler's Experience Purchasing an LG Phone**

40.     In late 2013, Plaintiff Liebler read LG's marketing materials regarding the LG Optimus L9 smartphone's (an LG Phone) internal storage capacity of 4.0 GB and its ability to store up to 32 gigabytes data on an SD card, on www.lg.com/us/mobile. The marketing materials viewed by Plaintiff Liebler were substantially similar to those shown in <u>Figures 2 and 9</u>. Relying on Defendant's representations, Plaintiff returned his recently purchased Nokia Lumia smartphone and exchanged it for the LG Optimus L9 smartphone (at a cost of $240.00).

41.     Once Liebler began using his LG Phone and downloading Apps, he quickly filled the phone's internal storage and noticed that the phone's actual internal storage capacity was smaller than represented (*i.e.*, he could only store 1.6 gigabytes of Apps and media and not the 4.0 gigabytes as advertised). He also discovered that the phone prevented him from installing Apps onto a separately purchased 32-gigabyte external SD card.

42.     Had Plaintiff Liebler known that the phone's internal storage was smaller than represented and that the phone prohibited storing Apps on external storage, he would not have

---

[15]     Due to LG's limitations placed on its L35G, consumers are, by default, left with less than 0.4% of the advertised storage—133 *megabytes* instead of the 33 *gigabytes* of advertised storage (*i.e.*, the 1 GB internal storage in addition to the 32 GB of external storage).

purchased the LG Phone, or he would have paid less money for the it.

43.     As it stands, Plaintiff Liebler received a phone of lesser value than the phone LG promised he would receive, and he has suffered and will continue to suffer an ascertainable loss. The difference in value between the product promised and the one received is quantified by a comparison of the cost of the promised Optimus L9 LG Phone and the cost of a phone from one of LG's competitors that has similar functionality and characteristics to the phone Plaintiff Liebler received. For example, the T-Mobile 768 is a similar phone to what Plaintiff received because, like the Optimus L9 LG Phone, it has a small amount of internal storage (128 MB) and cannot install Google Play Apps to an external memory card.[16] The retail price of the T-Mobile 768 is $72.00.

**IV.   Plaintiff Carey's Experience Purchasing an LG Phone**

44.     In early 2013, Plaintiff Carey read LG's marketing materials regarding its L35G smartphone's (an LG Phone) ability to store data on an SD card of up to 32 gigabytes or on the included 4-gigabyte SD card on the outside of the phone's packaging. The marketing materials viewed by Plaintiff Carey were substantially similar to those shown in Figure 10. Relying on Defendant's representations, Plaintiff purchased the L35G smartphone from a local Wal-Mart store for $79.99.

45.     At the time of purchase, Plaintiff Carey was aware that his purchase was subject to a 15-day return period in which he could get a full refund or exchange the L35G for a different phone. After he purchased the LG Phone, Plaintiff Carey viewed the L35G's internal storage specifications by navigating to the phone's storage settings. Therein, he saw that the L35G phone had 1.0 gigabyte of internal storage. The specifications viewed by Plaintiff Carey were

---

[16]     *T-Mobile 768 Smartphone | T-Mobile 768 Reviews & Tech Specs | T-Mobile*, http://www.t-mobile.com/cell-phones/t-mobile-768.html (last visited July 15, 2014).

substantially similar to those shown in <u>Figure 3</u>. Plaintiff Carey relied on the representations related to the internal storage capacity of the L35G in choosing not to return the L35G during the return period.

46.     Because Defendant's representations and omissions were made to Plaintiff before and during his return period, they were one and the same with any statements relied upon at the time Plaintiff purchased the phone.

47.     Once Carey began using his LG Phone and downloading Apps, and after the 15-day return period, he quickly filled the phone's internal storage and noticed that the L35G's actual internal storage capacity was smaller than represented (*i.e.*, he could not download and install 1.0 gigabyte worth of Apps). He also discovered that the L35G prevented him from installing Apps onto the included 4-gigabyte external SD card or onto a separately purchased 16-gigabyte external SD card.

48.     Had Plaintiff known that the L35G's internal storage was smaller than represented and that the smartphone prohibited storing Apps on external storage, he would not have purchased the LG Phone, or he would have paid less money for the smartphone.

49.     As it stands, Plaintiff Carey received a smartphone of lesser value than the smartphone LG promised he would receive, and he has suffered and will continue to suffer ascertainable loss. The difference in value between the product promised and the one received is quantified by a comparison of the cost of the promised L35G LG Phone and the cost of a phone from one of LG's competitors that has similar functionality and characteristics to the phone Plaintiff Carey received. For example, the Samsung T404G is a similar phone to what Plaintiff Carey received because, like the L35G LG Phone, it has a small amount of internal storage (20

MB) and cannot install Google Play Apps to an external memory card.[17] The retail price of the Samsung T404G is $29.99.

## CLASS ALLEGATIONS

50.  **Class Definition**: Plaintiffs Liebler and Carey bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and a class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States who purchased an LG Optimus L9, Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, Motion 4G, or L35G phone.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

51.  **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

52.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions

---

[17]  *Samsung T404G Cell Phone Review - Yahoo Voices - voices.yahoo.com*, http://voices.yahoo.com/samsung-t404g-cell-phone-review-11589552.html?cat=15 (last visited July 14, 2014).

predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

    a)    Whether LG intentionally misrepresented and/or omitted the fact that the internal storage space of the LG Phones was significantly less than advertised;

    b)    Whether LG intentionally misrepresented and/or omitted the fact that Apps could not be installed on or moved to its LG Phones' external SD storage cards;

    c)    Whether LG's conduct described herein constitutes a violation of the New Jersey Consumer Fraud Act;

    d)    Whether LG's conduct described herein constitutes fraud in the inducement;

    e)    Whether LG's conduct described herein constitutes negligent misrepresentation;

    f)    Whether LG's conduct described herein constitutes breach of express warranty; and

    g)    Whether LG's conduct described herein resulted in unjust enrichment to Defendant.

53.    **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Class.

54.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in

complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the Class.

55. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

56. **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

57.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of New Jersey's Consumer Fraud Act**
**N.J. Stat. §§ 56, *et seq.***
**(On behalf of Plaintiffs and the Class)**

58.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

59.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against unfair, deceptive, or fraudulent business practices. The LG Phones are "merchandise" within the meaning of the NJCFA. And Plaintiffs, members of the Class, and LG are all "persons" within the meaning of N.J. Stat § 56:8-1.

60.     The NJCFA prohibits, *inter alia*, the use of any deception, fraud, misrepresentation, or the knowing concealment or omission of any material fact in connection with the sale or advertisement of any merchandise.

61.     As alleged herein, Defendant has engaged in and has, and continues to have, direct knowledge of deceptive practices, misrepresentations, and the concealment or omission of material facts as defined by N.J. Stat § 56:8-2, *et seq.*, to the detriment of Plaintiffs and the Class by falsely advertising the LG Phones' available internal storage and omitting important facts regarding the LG Phones' external storage functionality.

62.     The internal storage capacity and the availability of external storage for a smartphone are material terms of any smartphone transaction because they are likely to affect a consumer's choice of, or conduct regarding, whether to purchase a particular device. Any

17

deception related to a smartphones' internal storage capacity and external storage availability is materially misleading.

63.     Defendant's misrepresentations regarding the capacity of its LG Phones' internal storage and omission regarding limitations it placed on the LG Phones' external storage are likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

64.     LG intended that Plaintiffs and the Class would rely on its material misrepresentations (and omission of material facts). And, Plaintiffs and the Class did reasonably rely on LG's material misrepresentations when purchasing LG Phones.

65.     Plaintiffs and the Class have suffered harm as a proximate result of Defendant's violations of law and wrongful conduct in the form actual monetary damages because Plaintiffs and the Class purchased the LG Phones at full price rather than paying less for them or purchasing a phone from one of LG's competitors (*e.g.*, the T-Mobile 768 for $72.00).

66.     Plaintiffs seek an order requiring Defendant to: (1) immediately stop the unlawful practices stated in this Complaint; (2) make full restitution of all funds wrongfully obtained; (3) pay actual damages; (4) pay treble damages; and (5) pay interest, attorneys' fees, and costs pursuant to N.J. Stat. § 56:8-19.

**SECOND CAUSE OF ACTION**
**Fraud in the Inducement**
**(On behalf of Plaintiffs and the Class)**

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     As described with particularity herein, Defendant misrepresented and/or failed to disclose material facts regarding the LG Phones' advertised and marketed internal storage capacity and external storage functionality.

69.     Through a series of advertisements, representations, and false statements regarding the LG Phones' internal storage capacity and external storage functionality, Defendant

wrongfully induced Plaintiffs and the other members of the Class to purchase LG Phones when they otherwise would not have purchased the phones or would only have agreed to purchase them at a lower price.

70.     Through a series of advertisements, representations, omissions, and false statements regarding the LG Phones, Defendant LG acted to misrepresent and obscure the actual specifications of the goods a consumer receives upon purchasing an LG Phone.

71.     Defendant LG took concrete and intentional steps to misrepresent the actual specifications of the devices Plaintiffs and members of the Class would ultimately receive upon purchasing the LG Phones.

72.     By committing the acts alleged in this Complaint, LG has designed, disseminated and/or has, and continues to have, knowledge of the dissemination of untrue and misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase LG Phones.

73.     The specifications and functionality of the goods being purchased (*i.e.*, the LG Phones' internal storage capacity and external storage functionality) are material terms of any transaction because they directly affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the specifications of a consumer product is materially misleading.

74.     The misrepresentation or omission of the contents of a product is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

75.     LG knew or should have known (based on its superior position to know the true state of facts about its LG Phones' internal storage capacity and external storage functionality) of the falsity of the representations it made regarding the LG Phones it marketed and charged for.

76.     LG intended that its deceptive and fraudulent misrepresentations and omissions would induce a consumer to rely and act by purchasing the LG Phones.

77.     Accordingly, Plaintiffs and members of the Class have each suffered an injury in fact and lost money in justifiable reliance on LG's misrepresentations and omissions of material fact (*e.g.*, the purchase price of the LG Phones or a portion thereof).

78.     In deceiving Plaintiffs and the Class by creating, enhancing, and supporting advertising that fails to clearly and conspicuously disclose, and in fact actively misrepresents, the actual specifications of the LG Phones, and inducing Plaintiffs and the Class to proffer payment based on those misrepresentations, LG has engaged in and has, and/or continues to have, direct knowledge of fraudulent practices designed to mislead and deceive consumers.

79.     Plaintiffs and the Class have suffered harm as a proximate result of LG's violations of law and wrongful conduct.

80.     Plaintiffs, on behalf of themselves and the Class, seek damages for LG's unlawful conduct.

### THIRD CAUSE OF ACTION
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the Class)**

81.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82.     Through its online advertisements, marketing, packaging, and owner's manuals, Defendant LG represented to Plaintiffs and the members of the Class that the LG Phones had specific internal storage capacities and external storage that could store up to 32 gigabytes of data without limitation.

83.     Defendant LG, throughout its marketing and advertisements consistently made misrepresentations as to its LG Phones' specific amount of internal storage and maximum amount of unencumbered external storage.

84.     Those representations were false, and at the time such false representations were made, LG either knew or should have known of their falsity or, at the very least, acted with negligence and carelessness in ascertaining the truth of the false statements. Contrary to Defendant LG's representations, it knew or should have known that the actual storage space afforded to its LG Phones was materially different from the advertised capacity (*e.g.*, over *seven* times less) and that the external storage space was subject to a material limitation on its use (*e.g.*, preventing Apps from being installed on or moved to external SD cards). LG did not have any reasonable ground for believing its representations to be true.

85.     LG intended that Plaintiffs and members of the Class would rely on its misrepresentations and omissions by purchasing its LG Phones.

86.     Plaintiffs and Class members justifiably relied on LG's misrepresentations by purchasing the LG Phones and were unaware of the falsity of LG's assertions at the time they were made. LG was fully aware that Plaintiffs and Class Members relied on its misrepresentations.

87.     As a direct and proximate result of LG's misrepresentations, Plaintiffs and members of the Class suffered damages in the form of monies paid to purchase the LG Phones.

### FOURTH CAUSE OF ACTION
**Breach of Express Warranties**
**(On behalf of Plaintiffs and the Class)**

88.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

89.     Defendant's sale of its LG Phones included express warranties created by Defendant's affirmations of fact, made through the marketing materials and advertisements displayed on Defendant's LG Phones' websites, on the smartphones' packaging, and within the smartphones' storage settings menu.

90.      Defendant's express warranties included affirmations of fact and promises that

the LG Phones would conform to the performance capabilities represented on Defendant's LG Phones' websites, on the smartphones' packaging, and within the smartphones' storage settings menu.

91.     Specifically, Defendant's statements included affirmations of fact and promises that the LG Phones would have specific internal storage capacities (*e.g.*, 4.0 gigabytes for the Optimus L9 and 1.0 gigabyte for the L35G) and external storage that could store up to 32 gigabytes of data without limitation. As such, Defendant expressly warranted that the LG Phones would conform to such specifications.

92.     Defendant, under the New Jersey Uniform Commercial Code, N.J. Stat § 12A:2-313, was obligated to deliver the LG Phones as advertised, promised, and/or described.

93.     Defendant breached its express warranties because the LG Phones did not—and could not—conform to the specifications advertised on Defendant's LG Phones' website, on the smartphones' packaging, and within the smartphones' storage settings menu.

94.     Defendant's failure to provide Plaintiffs and the Class members with smartphones that included the advertised specifications constitutes a breach of its express warranty to include such specifications with the LG Phones.

95.     Plaintiffs and the members of the Class relied on Defendant's affirmations, promises, and descriptions when they purchased the LG Phones. But for Defendant's affirmations and promises, Plaintiffs and the Class would not have purchased the LG Phones, would have only agreed to purchase them at a lower price, or would have purchased a phone from one of Defendant's competitors. As such, Defendant's breach of express warranties injured Plaintiffs and the Class because they purchased a product of diminished value—LG Phones that do not have the specifications as described by Defendant's affirmations and promises.

96.     Because the LG Phones that Plaintiffs and the Class members received did not have the specifications as expressly warranted and represented by Defendant, Plaintiffs and the members of the Class have been damaged insofar as they did not receive the benefit of their bargain.

97.     By serving this Complaint, Plaintiffs and the Class hereby give Defendant notice that they have breached the express warranties described above. Plaintiffs and the members of the Class request maximum damages as provided by the New Jersey Commercial Code.

98.     Plaintiffs seek an order requiring Defendant to pay the maximum damages under the New Jersey Uniform Commercial Code.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment, *in the alternative***
**(On behalf of Plaintiffs and the Class)**

99.     Plaintiffs incorporate the foregoing allegations 1 through 87 as if fully set forth herein.

100.    Defendant knowingly profited from the sale of its LG Phones to Plaintiffs and Class members.

101.    Plaintiffs and the Class have conferred a benefit upon Defendant. Defendant has received and retained money belonging to Plaintiffs and the Class as a result of its unlawful and deceptive conduct described herein.

102.    Defendant appreciates or has knowledge of the benefit conferred upon it by Plaintiffs and the Class.

103.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and the Class that it unjustly received as a result of its unlawful and deceptive conduct described herein.

104.    Plaintiffs and the Class have suffered financial loss as a direct result of

Defendant's unlawful and deceptive conduct described herein.

105.    Plaintiffs, on their own behalf and on behalf of the Class, seek restitution of the proceeds Defendant received as a result of its unlawful and deceptive conduct described herein, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David Liebler and Greg Carey on behalf of themselves and the Class, respectfully request that this Court enter an order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing David Liebler and Greg Cary as representatives of the Class, and appointing their counsel as class counsel;

B.    Declaring that Defendant's actions, as set out above, violate New Jersey's Consumer Fraud Act, and constitute fraud in the inducement, negligent misrepresentation, breach of express warranty, and unjust enrichment;

C.    Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    Awarding damages, including treble damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

E.    Awarding Plaintiffs and the Class restitution in the form of complete disgorgement of all revenue derived from the sale of the LG Phones;

F.    Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

G.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

allowable; and

H.    Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**DAVID LIEBLER and GREG CAREY**,
individually and on behalf of all others similarly
situated,

Dated: July 15, 2014

By:  /s/ Stefan L. Coleman
      One of Plaintiffs' Attorneys

Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Eve-Lynn Rapp*
erapp@edelson.com
Amir Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiffs and the Putative Class