# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LIEBLER, and GREG CAREY, individually and on behalf of all others similarly situated, | : : : Case No. 2:14-cv-03500 (JLL) (JAD) |
| Plaintiffs, | : : |
| vs. | : : |
| LG ELECTRONICS U.S.A., INC., a Delaware Corporation, | : : : |
| Defendant. | : : |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LG ELECTRONICS U.S.A., INC.'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

PLAINTIFFS' ALLEGATIONS ..............................................................4

    I.     Overview of LG and Android Smartphones .........................4

    II.    Plaintiffs' Experiences Purchasing LG Smartphones ..........5

ARGUMENT ...........................................................................................7

    I.     Plaintiffs' Fraud Claims Fail ..............................................7

         A.    Legal Standard on a Motion to Dismiss......................8

         B.    Plaintiffs' Claims Must be Dismissed Because None of The Representations That They Allegedly Relied Upon Are False or Misleading ...............................................................9

             1.    No False Representations ................................9

             2.    No Concealment of Material Information ......17

         C.    Plaintiffs Fail to Allege an Ascertainable Loss .........19

         D.    Rule 9(b) Precludes Plaintiffs' Unspecified Fraud Claims ......20

    II.    The NJCFA Does Not Apply ............................................23

    III.   Plaintiffs' Warranty Claims Fail .......................................25

         A.    No Express Warranty Existed.................................25

         B.    If an Express Warranty Existed, it Was Not Breached............26

         C.    Michigan and Kansas Law Applies Here And Plaintiffs Lack Privity ......................................................................27

             1.    Choice of Law Analysis ................................27

             2.    No Privity Exists Between Plaintiffs and LG US...........28

    IV.   Plaintiffs' Unjust Enrichment Claim Fails..........................29

    V.    The Economic Loss Doctrine Applies to Plaintiff Liebler's Claims ..31

    VI.   Plaintiffs Lack Standing to Pursue Injunctive Relief and Claims Relating to Phones They Never Purchased .........................32

i

A.     Plaintiffs Lack Standing to Pursue Injunctive Relief ...............33

B.     Plaintiffs Lack Standing to Assert Claims as to Phones They Never Purchased ....................................................................35

VII.   Plaintiffs Cannot Seek Relief on Behalf of Putative Class Members .38

CONCLUSION ........................................................................................................39

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Alongi v. Bombardier Recreational Prods., Inc.*,
 12-13374, 2013 WL 718755 (E.D. Mich. Feb. 27, 2013) ...................................29

*Anjelino v. N.Y. Times Co.*,
 200 F.3d 73 (3d Cir. 2000) ......................................................................... 33, 36

*Arcand v. Brother Intern. Corp.*,
 673 F. Supp. 2d 282 (D.N.J. 2009).....................................................................20

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................8, 36

*Baby Neal for & by Kanter v. Casey*,
 43 F.3d 48 (3d Cir. 1994) ...................................................................................37

*Ballentine v. United States*,
 486 F.3d 806 (3d Cir. 2007) ...............................................................................33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................................8, 31

*Caputo v. Nice-Pak Prod., Inc.*,
 300 N.J. Super. 498 (App. Div. 1997)..................................................................30

*Coastal Group, Inc. v. Dryvit Sys., Inc.*,
 274 N.J. Super. 171 (App. Div. 1994)..................................................................31

*Cooper v. Samsung Elecs. Am., Inc.*,
 No-07-3853, 2008 WL 4513924 (D.N.J. Sept. 30, 2008) ................. 20, 25, 30, 31

*Crozier v. Johnson & Johnson Consumer Cos.*,
 901 F. Supp. 2d 494 (D.N.J. 2012)......................................................................22

*Dicuio v. Brother Intern. Corp.*,
 No. 11-1447, 2012 WL 3278917 (D.N.J. Aug. 9, 2012)......................................26

*Donachy v. Intrawest U.S. Holdings, Inc.*,
 CIV.A. 10-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012) ...............................38

*Dzielak v. Whirlpool Corp.*,
   CIV. 2:12-0089, 2014 WL 2758746 (D.N.J. June 16, 2014) ................. 27, 30, 31

*Feldman v. Mercedes-Benz USA, LLC*,
   2:11-CV-00984, 2012 WL 6596830 (D.N.J. Dec. 18, 2012) ..............................28

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ..............................................................................8

*Gray v. Bayer Corp.*,
   No. 08-4716, 2009 WL 1617930 (D.N.J. June 9, 2009) ..................................9, 36

*Haas v. Pittsburgh Nat. Bank*,
   526 F.2d 1083 (3d Cir. 1975) ............................................................................37

*Hemy v. Perdue Farms, Inc.*,
   Civ. No. 11–888, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ..................... 13, 35

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*,
   284 Mich. App. 617 (2009) ................................................................................28

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ............................................................................11

*In re Gerber Probiotic Sales Practices Litigation*,
   No. 12-835, 2014 WL 1310038 (D.N.J. Mar. 31, 2014) ............................ passim

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ..............................................................................33

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   CIV 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009)............................ passim

*Independent Enterp. v. Pittsburgh Water & Sewer Auth.*,
   103 F.3d 1165 (3d Cir. 1997) ............................................................................33

*Irwin Seating Co. v. IBM Corp.*,
   1:04CV568, 2005 WL 1475390 (W.D. Mich. June 22, 2005) ...........................32

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir.1994) ...............................................................................12

*Kirtley v. Wadekar*,
   No. 05-5383, 2006 WL 2482939 (D.N.J. Aug. 25, 2006) ....................................31

*Knox v. Samsung Elecs. Am., Inc.*,
   No. 08-4308, 2009 WL 1810728 (D.N.J. June 25, 2009) ....................................25

*Lebegern v. Forman*,
   471 F.3d 424 (3d Cir. 2006) ...............................................................................23

*Lipov v. Louisiana-Pac. Corp.*,
   1:12-CV-439, 2013 WL 3805673 (W.D. Mich. July 22, 2013) ..........................30

*LLDVF LP v. Dinicola*,
   No. 09-1280, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 33, 35

*Maniscalco v. Brother Int'l (USA) Corp.*,
   709 F.3d 202 (3d Cir. 2013) ......................................................................... 24, 25

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) .....................................................................14

*McNair v. Synapse Grp.*,
   672 F.3d 213 (3d Cir. 2012) ......................................................................... 33, 34

*Montgomery v. Kraft Foods Global, Inc.*,
   1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) .......... 27, 28, 29

*Moulton v. LG Electronics USA, Inc.*,
   No. 11-4073, 2012 WL 3598760 (D.N.J. Aug. 21, 2012) ...................................26

*Murphy v. Proctor & Gamble Co.*,
   695 F. Supp. 2d 600 (E.D. Mich. 2010) .............................................................32

*Neibarger v. Universal Coops.*,
   439 Mich. 512 (1992) .........................................................................................32

*Postal Presort, Inc. v. Midwest Single Source, Inc.*,
   130 P.3d 1247, 2006 WL 851238 (Kan. Ct. App. 2006).....................................29

*Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*,
234 Kan. 742 (1984) ................................................................... 27, 28

*Regal Ware, Inc. v. Vita Craft Corp.*,
653 F. Supp. 2d 1146 (D. Kan. 2006)...................................................30

*Sierra Club v. Morton*,
405 U.S. 727 (1972)........................................................................35

*Simpson v. Widger*,
311 N.J. Super. 379 (App. Div. 1998) ...............................................26

*Snyder v. Farnam Cos.*,
792 F. Supp. 2d 712 (D.N.J. 2011) ....................................................23

*Spring Motors Distributors, Inc. v. Ford Motor Co.*,
489 A.2d 660 (N.J. 1985) .................................................................27

*Stewart v. Smart Balance, Inc.*,
CIV.A. 11-6174, 2012 WL 4168584 .................................. 9, 35, 36, 37

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*,
CIV. 08-5380, 2009 WL 4730187 ....................................... 9, 21, 23, 25

*Warriner v. Stanton*,
475 F.3d 497 (3d Cir. 2007) .............................................................23

*Williamson v. Michals*,
No. 12-4548, 2013 WL 4509976 .........................................................4

*Zavala v. Wal Mart Stores*,
691 F.3d 527 (3d Cir. 2012) .............................................................13

**Statutes**

Kan. Stat. Ann. § 50......................................................................24

Mich. Comp. Laws. § 445.911..........................................................24

N.J. Stat. § 56.........................................................................2, 23

**Federal Rules**

Federal Rule of Civil Procedure 12 ............................................................. 1, 4, 8, 33

Federal Rule of Civil Procedure 9 ................................................................. passim

Federal Rule of Evidence 201 ...............................................................................13

**Other Authorities**

Restatement (Second) of Conflict of Laws § 148....................................................24

Restatement (Second) of Conflict of Laws § 188....................................................28

LG Electronics U.S.A., Inc. ("LG US") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint,[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(1) for lack of standing.

## INTRODUCTION

Plaintiffs David Liebler (a Michigan resident) and Greg Carey (a Kansas resident) bring this purported nationwide class action complaining that the LG US smartphones they bought had less available free memory and less external storage functionality than Plaintiffs had allegedly hoped.  Yet, Plaintiffs do not allege that LG US's statements that their phones would have 1 or 4 gigabytes ("GB") of total memory and be compatible with external memory cards were false.  Nor do they point to any representations by LG US that the total listed memory would be available for consumer use, as opposed to operating systems and other pre-installed applications ("Apps").  Nor do they allege that LG US ever stated that smartphone external storage could be used for any particular purpose.  Instead, Plaintiffs implicitly contend that based on the admittedly accurate product specifications stated by LG US, they hoped the phones would have 1 and 4 GB of unencumbered

---

[1] The Amended Class Action Complaint, dated July 15, 2014, is referenced herein as the "Complaint" or "Compl."  Liebler amended his original pleading shortly after filing the action.  Among other things, the Amended Complaint added Carey as a Plaintiff, dropped the breach of contract claim, and added a breach of express warranty claim.

capacity beyond that needed for the phones' operating system, and Apps and external storage on which they could place any files they liked.  But if Plaintiffs had these hopes, they were not based on any false representations by LG US, nor were they reasonable.  In fact, Plaintiffs' own admissions in the Complaint, as well as common sense, undermine the plausibility of those hopes.  Plaintiffs' allegations fail to support any of the causes of action asserted.

All of Plaintiffs' claims, for (1) violation of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. § 56, *et seq.*; (2) fraud in the inducement; (3) negligent misrepresentation; (4) breach of express warranty; and (5) unjust enrichment, suffer from this central defect.  There can be no valid claim where Plaintiffs received exactly what was represented.  In addition, specific defects appear in the pleading of individual claims.

Plaintiffs cannot invoke the NJCFA because, under applicable choice of law principles, their home states (Michigan and Kansas) have a more significant relationship to their claims than does New Jersey.  Even if they could invoke the NJCFA, Plaintiffs' claims under that statute, as well as their fraudulent inducement and negligent misrepresentation causes of action, fail to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  The Complaint omits crucial details, such as when, where, and from whom Plaintiffs purchased their LG phones, the jurisdiction in which they viewed the statements on which they claim

to have relied, and where the phones were used.  These omissions doom their fraud-based claims.

Plaintiff Liebler's claims of fraudulent inducement and negligent misrepresentation also fail under the "economic loss" doctrine.  Though styled as tort claims, the injuries alleged constitute economic loss from a commercial transaction, for which contract, not tort, is the appropriate remedy (if any).

Plaintiffs' express warranty claims also fail on multiple grounds.  First, Liebler's phone came with an express disclaimer that dooms his claim. Moreover, even assuming, *arguendo*, that the statements about storage capacity constitute an express warranty, there can be no breach where those statements are true (and Plaintiffs do not allege otherwise).  Further, Plaintiffs do not, and could not, allege privity with LG US.

Similarly, Plaintiffs' unjust enrichment claims fail because Plaintiffs got what was promised.  Moreover, LG US did not wrongly obtain some benefit from Plaintiffs, a crucial element of any such claim.

Finally, as to Plaintiffs' demand for injunctive relief, the Complaint makes no effort to satisfy the threshold requirement of standing.  Nowhere do Plaintiffs claim that they will suffer the same injury in the future.  Plaintiffs also wrongly assert claims on smartphone models they did not purchase, without any detailed explanation for why those other smartphones are somehow "similar to" the phones

they bought.  Rule 12(b)(1) thus requires dismissal of Plaintiffs' claims for

injunctive relief and claims as to the six phone models they did not purchase for

lack of standing.

For these reasons and as set forth more fully below, the Complaint should be

dismissed in its entirety.[2]

## PLAINTIFFS' ALLEGATIONS

### I.   Overview of LG and Android Smartphones.

LG US is one of the world's leading manufacturers of smartphones that run

on the "Android" operating system.  Compl. ¶ 13 (Ex. A to Declaration of Mark M.

Rottenberg ("Rottenberg Decl.")).  The Android operating system, engineered by

Google, Inc., provides LG smartphones with the ability to play music and videos,

access the internet, and work with Android's mobile Apps.  *Id.* ¶ 14.  On LG

smartphones, as on all Android phones, some Apps are pre-loaded with the phone

and some Apps can be downloaded and installed from the "Google Play" virtual

retail store.  *Id.* ¶¶ 15-16.

All Android smartphones, including LG phones, contain a fixed amount of

internal storage—*i.e.*, the "fixed amount of memory that houses the operating

---

[2] Moreover, dismissal should be with prejudice because Plaintiffs have already
amended their pleading once as of right and, as explained below, no pleading
ingenuity can correct the defects of Plaintiffs' fraud-based theory of injury.  *See
Williamson v. Michals*, No. 12-4548, 2013 WL 4509976, at *1 (D.N.J. 2013)
(dismissing claims with prejudice where plaintiffs failed to cure pleading
deficiencies).

system along with other files and media." *Id.* ¶¶ 3 n.4, 19.  LG phones also have a slot that physically accepts small and removable Secure Digital ("SD") memory cards, commonly referred to as "external storage," which supplement the phones' internal storage capacity. *Id.* ¶¶ 3 n.4, 34.

## II.    Plaintiffs' Experiences Purchasing LG Smartphones.

Liebler, a resident of Michigan, claims that on some unspecified date in "late 2013" he read unspecified marketing materials on the LG US website regarding the internal and external storage capacity of the LG Optimus L9 smartphone. *Id.* ¶¶ 7, 40.  He does not quote any such materials.  Instead, he claims the materials he reviewed are "substantially similar" to the following statements that he includes as "figures" in the Complaint:

- The Optimus L9 has "4 GB" of "Total Internal Memory"; and

- The Optimus L9 has a "MicroSD Memory Slot" that "[s]upport[s] up to 32 GB."

*Id.* ¶ 22 (Figure 2), ¶ 36 (Figure 9), ¶ 40.  Claiming to have relied on such "similar" representations, Liebler states that he returned his recently purchased Nokia Lumia smartphone and exchanged it for an Optimus L9 at a cost of $240.00.  *Id.* ¶ 40. According to Liebler, once he began using his Optimus L9 and downloading Apps to the phone, he filled the phone's internal storage and noticed it could only store 1.6 GB—not 4 GB—of additional Apps and media on his phone. *Id.* ¶ 41.  He also

claims he discovered that he could not store Apps on a separately-purchased 32 GB external SD card.  *Id.*

Carey, a resident of Kansas, claims that on some unspecified date in "early 2013," he viewed statements on the outside packaging of an LG L35G phone.  *Id.* ¶¶ 8, 44.  Carey does not quote any actual statements he claims to have read, but alleges the statements were "substantially similar" to the following statements, also included as "figures" in the Complaint:

- The L35G can support an "[e]xternal microSD Card up to 32 GB"; and

- The L35G "[i]ncludes . . . [a] 4GB microSD Memory Card."

*Id.* ¶ 37 (Figure 10), ¶ 44.  Allegedly relying on these statements, Carey purchased an L35G from a local Wal-Mart for $79.99.  *Id.* ¶ 44.  After he purchased the phone, but within the 15-day window in which he could exchange it or return it for a full refund, he "navigat[ed] to the phone's storage settings" and "saw that the L35G had 1.0 gigabyte of internal storage."  *Id.* ¶ 45.  He allegedly relied on this representation in deciding not to return the phone.  *Id.*  Once Carey began using his L35G and downloading Apps onto the phone (but after the return deadline passed), he filled the phone's internal storage and noticed that he could not download and install 1 GB worth of Apps on his phone.  *Id.* ¶ 47.  He claims that he also discovered that he could not store Apps on the 4 GB external SD card that came with the phone or onto a separately-purchased 16 GB external SD card.  *Id.*

Both Liebler and Carey assert that if they had known that they could not use the entirety of their phones' stated total internal storage for downloading and storing Apps (rather than have a portion consumed by the phones' operating systems and pre-loaded Apps) and that they could not transfer Apps onto an external memory card (as opposed to photos and videos, which they could transfer and save in external memory), they would not have purchased their LG phones (or they would have paid less for them).  *Id.* ¶¶ 42, 48.

## ARGUMENT

## I.    Plaintiffs' Fraud Claims Fail.

Each of Plaintiffs' claims proceed from a central factual allegation that LG US "falsely advertis[ed] the LG Phone's available internal storage and omit[ted] important facts regarding the LG Phones' external storage functionality."  Compl. ¶ 61 (NJCFA), ¶ 69 (false statements regarding "internal storage capacity and external storage functionality") (fraud), ¶ 83 ("specific amount of internal storage and maximum amount of unencumbered external storage") (negligent misrepresentation), ¶ 91 ("specific internal storage capacities" and "external storage" capability) (warranty), ¶ 101 (unspecified "unlawful and deceptive conduct described herein") (unjust enrichment).  What that allegation lacks, and what the entire Complaint lacks, is any suggestion that the actual LG US

statements regarding internal and external storage were anything but true.  Thus, each of the claims must be dismissed.

A. <u>Legal Standard on a Motion to Dismiss.</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to state a plausible claim for relief, "the pleaded factual content" must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

Here, Plaintiffs allege fraud or deception; thus, they must also satisfy the heightened pleading standard of Rule 9(b).  They must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Thus, for Plaintiffs' NJCFA, fraud in the inducement, and negligent misrepresentation claims (collectively, the "fraud" claims), Plaintiffs must plead "the who, what, when, where, and how:  the first paragraph of any newspaper story." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, CIV. 08-5380, 2009 WL 4730187, at *5 (D.N.J. Dec. 3, 2009); *see Stewart v. Smart*

*Balance, Inc.*, CIV.A. 11-6174, 2012 WL 4168584, at *7 (D.N.J. June 26, 2012) (applying Rule 9(b) pleading standard to NJCFA claim); *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *2-3 (D.N.J. June 9, 2009) (applying Rule 9(b) pleading standard to fraud and negligent misrepresentation claims).

    B.  <u>Plaintiffs' Claims Must be Dismissed Because None of The Representations That They Allegedly Relied Upon Are False or Misleading.</u>

        1. *No False Representations*

Plaintiffs' claims center on allegations that they viewed representations regarding the storage capacity of the Optimus L9 and L35G phones, that LG US failed to disclose the usability of that storage capacity, and that, in reliance on LG US's representations, they purchased LG phones. But their own pleadings reveal that none of the statements Plaintiffs claim to have seen or relied upon were false or misleading. They were, instead, simply product specifications about actual total memory and external storage that were wholly accurate. That Plaintiffs may have (baselessly) hoped for more capabilities does not support claims of false representation.

Plaintiffs pepper the Complaint with allegations about phones they did not purchase and phones they have not placed at issue. But, when stripped to allegations regarding the smartphones actually at issue, the Complaint only alleges

that Plaintiffs reviewed statements "substantially similar" to the following product specifications:

> (1) The Optimus L9 phone has 4 GB of total internal memory;
>
> (2) The L35G phone has 1 GB of total internal memory;
>
> (3) The L35G phone comes with a 4 GB SD card; and
>
> (4) Both phones support an external SD card "up to" 32 GB.

Compl. ¶¶ 22, 36, 39-40, 44-45, 37.

None of these representations are false, and Plaintiffs got exactly what was represented. Indeed, Plaintiffs admit that they received phones with the represented total internal memory and that they were able to use external SD cards with their phones. Compl. ¶¶ 40, 44.

Implicit in Plaintiffs' Complaint, however, is the assumption that Plaintiffs somehow hoped their phones would have 1 or 4 GB of totally free memory, unencumbered by operating systems or Apps or other features and that they could store whatever they wanted on the SD cards. But if Plaintiffs had these hopes, they were not based on any material misrepresentations by LG US. Plaintiffs point to no representations by LG US that they would have access to all or even any particular amount of their phones' internal memory. Nor do they allege that LG US told them they could store every conceivable file type on their SD cards, or even Apps. If Plaintiffs had wanted these highly specific and subjective features

they should have inquired about the functionality of the phones they considered for purchase.

Indeed, the Complaint admits that "internal storage" means a "fixed amount of memory *that houses the operating system along with other files and media*." *Id.* ¶ 3 n.4 (emphasis added). Further, it concedes that "[t]ypically, [a smartphone's] internal storage *holds the operating system along with system and application files* (i.e., Apps), music, photos, and more." *Id.* ¶ 19 (emphasis added). When Plaintiffs complain about "bloatware," they cite a number of publically available articles discussing the fact that smartphones come with preinstalled Apps that consume a portion of a phone's overall memory and that every phone must sacrifice some of its internal memory to the operating system. *Id.* ¶ 26 n.11, 13 (Exs. B & C to Rottenberg Decl.).[3] Finally, Plaintiff Liebler alleges that he already owned a smartphone when he purchased his LG phone (Compl. ¶ 40), so he surely knew that these features are housed in a phone's internal memory, and thus only a portion of the total memory would be available for his use.

The Complaint concedes this basic fact because it is a matter of common knowledge that smartphones, which have been sold in the United States for years,

---

[3] Although these articles are not attached to the Amended Complaint they are "specifically referenced therein and thus are properly considered by the court in this motion to dismiss." *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, CIV 08-939, 2009 WL 2940081, at *3 n.1 (D.N.J. Sept. 11, 2009) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

can only function as "smartphones" because they have operating systems and pre-installed Apps that reside on their internal memory.  As to the functionality of SD cards, most consumers use such cards for storage of photos and music. Additionally, such cards are designed to house larger media files, such as movie files.  Whether an App can be freely transferred to an SD card, however, will obviously depend on a variety of factors, including the controls an App developer decides to place on the Apps.  Common sense should tell any smartphone consumer that App developers will limit transferability of their proprietary product to portable devices that could result in a proliferation of users with no profit to the developers.  *See CNET "Ask Maggie"* at http://www.cnet.com/news/help-im-confused-about-storage-on-my-smartphone/ (noting that App developers do not want users distributing Apps to other users) (Ex. D to Rottenberg Decl.) (last visited Sept. 15, 2014); *see also* Google's App Developers Website at http://developer.android.com/guide/topics/ data/install-location.html (discussing how decision of App storage location may be made by developers) (last visited Sept. 15, 2014) (Ex. E to Rottenberg Decl.).[4]  Additionally, Google itself has

---

[4] "[A]lthough, at the motion to dismiss stage, generally 'a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record,' *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994), a Court may take judicial notice of some publicly available facts, such as newspaper articles, in addition to the allegations in the complaint." *LLDVF LP v. Dinicola*, No. 09-1280, 2010 WL 3210613, at * 3 (D.N.J. Aug. 12, 2010).

limited the ability to transfer Apps to SD cards.  *See Int'l Bus. Times* article at

http://www.ibtimes.com/samsung-galaxy-s4-tutorial-how-transfer-apps-micro-sd-

card-updated-handsets-1346369 (discussing fact that Google disabled App

transferability) (last visited Sept. 15, 2014) (Ex. F to Rottenberg Decl.).  Under

Federal Rule of Evidence 201, this Court may take judicial notice of facts

"generally known within the trial court's territorial jurisdiction" including matters

of "common knowledge."  *Zavala v. Wal Mart Stores*, 691 F.3d 527, 546 (3d Cir.

2012) (taking judicial notice on a motion to dismiss that emergency exits are by

regulation a common feature of commercial buildings in the United States).

       Thus, if Plaintiffs looked at LG US's simple, factually accurate product

specifications and wrongly concluded that all that memory would be available

exclusively for their use or that they could put whatever they wanted on the SD

cards, those unreasonable expectations had nothing to do with what LG US

actually stated about the phones.  Any assertion of consumer misunderstanding of

product specifications depends on a "reasonable expectation" standard.  *See Hemy*

*v. Perdue Farms, Inc.*, Civ. No. 11–888, 2011 WL 6002463, at *15-17 (D.N.J.

Nov. 30, 2011) (concluding that plaintiffs could not claim a reasonable expectation

that they believed defendants' chickens were humanely slaughtered based on

defendants' representations they were "humanely raised"); *see also Mason v.*

*Coca-Cola Co.*, 774 F. Supp. 2d 699, 703-04 (D.N.J. 2011) (dismissing NJCFA

claims due to failure to plead with "specificity . . . how defendant made false or deceptive statements to plaintiffs regarding the healthiness or nutritional value of the soda" and concluding that plaintiffs' bare assertion that "their expectations of the soda were disappointed" was insufficient to state a claim).

Here, given the bare specifications of memory storage, there is no plausible interpretation of those specifications that would support Plaintiffs' alleged hopes about unencumbered capacity or unlimited usage. If Plaintiffs did have such hopes, they were patently baseless.

Recognizing the weakness of their position, Plaintiffs attempt to import other representations, unrelated to the phones they bought, to justify their unreasonable expectations. Thus, Plaintiffs reference the Optimus F3, a phone that neither of them bought. Compl. ¶ 21. They reference unspecified "LG Phones," but cite articles published in 2014 that mention only the LG G2 and G Flex, phones they did not purchase.[5] *Id.* ¶ 26 n.11, ¶ 26 n.13. And, they discuss the LG Revolution and LG Optimus M, again, phones they did not purchase and that are not at issue. *Id.* ¶ 35.

Even more unreasonably, Plaintiffs allege that LG US somehow "created" the expectation that consumers "can store any type of data on the external storage,

---

[5] The phones at issue in this litigation are the "LG Phones," which Plaintiffs defined as the Optimus L9, Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, Motion 4G, and L35G. Compl. ¶ 1 n.2.

including Apps" in part because "LG previously advertised that its LG Phones allowed for the storage of Apps on external SD cards" and because in "many instances, LG even placed instructions on how to 'save [Apps] to the [SD] card' within the LG Phones' owners' manual." *Id.* ¶ 35. Again, Plaintiffs do not allege that they saw these advertisements or owner's manuals, much less relied upon them. And even if they did, such statements are wholly irrelevant because the owner's manuals are for the Revolution and Optimus M – phones Plaintiffs never purchased and that are not at issue.[6] *Id.* Moreover, whatever LG US might have said about the transferability of Apps to SD cards in the owner's manuals for particular phones cannot reasonably be extrapolated to *all* LG US smartphones. LG US markets different phones with different features and Plaintiffs cannot subjectively set their expectations about one phone based on statements made about another.

Moreover, in a further bid to buttress their baseless claims, Plaintiffs inaccurately claim that consumers "have access" to "as little as 11%," or even "as

---

[6] Plaintiffs also allege statements by LG US, not attributed to any particular phone, and not allegedly seen or relied upon by Plaintiffs before buying their phones. Compl. ¶ 2 (LG smartphones "let consumers 'watch movies on Netflix, shoot and share HD video and browse the web' and 'browse' and download 'thousands of apps'"); ¶ 3 ("LG advertises that its LG Phones have a sizeable amount of 'internal' storage…."); ¶ 16 ("In Defendant's words, its LG Phones 'provide[] easy integration with Google™ apps and widgets, and/or allow[] [consumers] to browse thousands of apps [] from games and books to camera flashes and coupons.'"). These alleged statements cannot constitute the basis for any reasonable expectations by Plaintiffs.

little as 0.4%" of specified storage capacity in their phones.  *See* Compl. ¶¶ 4, 6.

These figures are wildly misleading.  At best, these numbers reflect storage for

downloadable Apps, not actual storage capacity for operating system functions,

media (such as photos), and other operations.  *See* Compl. ¶ 39 (suggesting that

consumers were "tricked" into believing that storage applied to "any type of data,

such as Apps and games").  Plaintiffs acknowledge that, while a "fixed amount of

memory" is available, some portion of that memory will be dedicated to the

"operating system along with other files and media."  *Id.* ¶ 2 n.4.  The figures,

moreover, ignore Google-mandated memory saving systems, which can help

reduce demands on Android-running smartphones.  *See* "Managing Your App's

Memory" page at www.android.com (cited at Compl. ¶ 1 n.1) (Ex. G to Rottenberg

Decl).

It is wholly unreasonable for Plaintiffs to have expected, based solely on LG

US's statements, that they could use every single byte for downloading and storing

Apps.  LG US provided basic, truthful product specifications about total internal

storage and the availability of external storage, no more and no less, and Plaintiffs

cannot import their unreasonable assumptions to buttress their misrepresentation

claims.

2.   *No Concealment of Material Information*

Plaintiffs' theory that LG US should have provided more information regarding storage capabilities fares no better.  Plaintiffs cannot rely on a theory of misrepresentation by omission, where no information is concealed.  For an omission to be actionable, the defendant must conceal a material fact.  *In re Toshiba America HD DVD Marketing & Sales Practices Litigation,* No. 08-939, 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009).  Where, as here, the allegations of Plaintiffs' own Complaint acknowledge that the allegedly omitted fact is well known, Plaintiffs' omission claims must fail.  *Id.*

Thus, for example, in *In re Toshiba*, the court dismissed omission-based fraud claims where the complaint established that the alleged omission was a well-publicized fact.  There, defendant withdrew its support for the HD DVD format because the Blu-ray format ultimately dominated the market.  *Id.* at *1-2.  As a result, plaintiffs alleged that, because defendant failed to inform them it might one day withdraw the HD DVD format, they were left with a product of greatly diminished value.  *Id.* at *8.  The court found, however, that the battle over which DVD format would prevail was a well-publicized fact that was conceded in the complaint.  *Id.* at 11-12.  Accordingly, the court dismissed plaintiffs' claims stating, "[t]o intend that others rely on [a] concealment of a fact, the fact must, of course, actually be *concealed*."  *Id.* at *12 (emphasis in original).

Here, not only was the information at issue not concealed, it was well known and the Complaint openly concedes that fact.  The Complaint includes a variety of allegations acknowledging that the internal memory of smartphones must contain an operating system and additional Apps.  *Supra* at 11-12.  And, as discussed previously, it is obvious and well-known that the transferability of Apps may be severely limited.  *Id.*  Thus, as in *Toshiba*, everything Plaintiffs complain about here was well known.

Not only was there no concealment, the information allegedly omitted was not material.  Failure to state the obvious – that total storage capacity necessarily includes space required for operating systems and Apps, or that Apps may not be transferable to SD cards – is by definition immaterial.

Thus, for example, while Plaintiff Liebler claims to have overpaid $120.00 for the L9 phone because the "similar" T-Mobile phone cost only $72.00 (Compl. ¶ 43), this comparison misleadingly suggests materiality for a single feature.  The specifications for the T-Mobile phone, like the LG L9 specifications, only provide information on total memory capacity and say nothing about memory dedicated to Apps.  *See* T-Mobile 768 Smartphone (cited in Compl. ¶ 12 n.16).   Thus, on Plaintiffs' own theory, customers would not have chosen the lower-priced T-768 based on a similarity in (undisclosed) memory limitations.  The T-768, moreover, is a "flip" phone, not a smartphone; thus the comparison of phones is not "apples

to apples." *See id*. (T-768 includes "large, easy-to-use" keys, suitable for older customers). A closer comparison (in price and features) would be the LG L35G, which costs $79.00. Again, on Plaintiffs' own theory, no materiality exists because the Complaint alleges that both the L35G and the T-768 included the same limitation on memory for App storage, and both shared the same price point. Plaintiffs' effort to suggest LG US made a material misrepresentation through this price comparison is disingenuous and should be rejected.

      C. <u>Plaintiffs Fail to Allege an Ascertainable Loss.</u>

      Plaintiffs' NJCFA claims fail for the additional and independent reason that Plaintiffs have not alleged an ascertainable loss. Although Plaintiffs assert a benefit-of-the-bargain theory – LG US sold them a product worth less than what was promised (*e.g.*, Compl. ¶ 42) – Plaintiffs never allege that they received phones that did not have the represented total storage capacity. Nor do they allege, as discussed above, why they believed they would have access to the entirety of the phones' memory or unfettered use of the SD card. This pleading failure is fatal, for without such allegations, this Court is left "to speculate as to whether [Plaintiffs'] expectation[s] [were] objectively reasonable, and more importantly, whether what Plaintiffs received was ostensibly less than what [LG US] promised." *Arcand v. Brother Int'l.. Corp.*, 673 F. Supp. 2d 282, 300-01 (D.N.J. 2009). Accordingly, Plaintiffs' NJCFA claims should be dismissed.

D. Rule 9(b) Precludes Plaintiffs' Unspecified Fraud Claims.

Plaintiffs' fraud claims do not satisfy the Rule 9(b) heightened pleading standard.  First, as discussed above, Plaintiffs fail to allege which specific representations they relied on in purchasing their phones.  Rather, they assert that they saw some unspecified "marketing materials" that were "substantially similar" to screenshots showing only phone storage capacity.  Compl. ¶¶ 40, 44.  Plaintiffs supply no specifics regarding these "marketing materials," as required by Rule 9(b).  This omission is fatal to their claims.  *See Cooper v. Samsung Elecs. Am., Inc.*, No-07-3853, 2008 WL 4513924, at *8 (D.N.J. Sept. 30, 2008) (dismissing fraud claims under Rule 9(b) where advertisement plaintiff allegedly relied on merely stated that TV purchased was a "1080p" unit).

Second, Plaintiffs fail to specify where, when, or from whom Liebler purchased his Optimus L9 phone[7] or when Carey purchased his L35G phone.  Nor do they allege in which state they viewed the unspecified marketing materials on which they claim to have relied or where the phones were used.  Courts consistently dismiss fraud-based claims in consumer products cases, even with allegations far more particularized than the conclusory assertions made here.  For example, in *Warma Witter Kreisler*, the plaintiff asserted a NJCFA claim alleging

---

[7] Liebler also fails to specify the full model name and number for the Optimus L9 phone he allegedly purchased.  There are two versions of the Optimus L9:  The Optimus L9 P769 and the Optimus L9 MS769.

that defendant's printers falsely misrepresented that toner cartridges were empty. 2009 WL 4730187, at *5.  The court concluded that plaintiff's claim failed the Rule 9(b) pleading standard because it did not specify "*where* the printer at issue was purchased, *where* it was used, or *where* Plaintiff's actions—in purchasing replacement toner cartridges—took place." *Id.*  Similarly, in *In re Gerber Probiotic Sales Practices Litigation*, No. 12-835, 2014 WL 1310038, at *8 (D.N.J. Mar. 31, 2014), a putative class action alleging deceptive marketing of baby products, this Court held that plaintiffs had not complied with Rule 9(b) because they failed to allege the date or date range during which they bought the baby products at issue, or the location where they purchased such products.  *See also Toshiba*, 2009 WL 2940081, at *13 (dismissing NJCFA claims for failure to adequately allege ascertainable loss where plaintiffs did not allege where or when they purchased their products).

Finally, although Plaintiffs allege in conclusory fashion that they relied upon LG US statements, they fail to specify what they actually relied on other than statements "substantially similar" to those bullet-pointed above; nor do they allege they were misled by these statements.  *See supra* at 10.  This pleading failure is fatal.  *See Gerber*, 2014 WL 1310038, at *9; *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 508 (D.N.J. 2012).

In *Crozier*, plaintiffs alleged that defendant's marketing scheme led consumers to believe its "NEO TO GO!" product contained antibiotics when it did not.  901 F. Supp. 2d at 497.  Plaintiffs alleged that the product was advertised in the same colors and with the same mark and trade dress as other Neosporin products that contained antibiotics, which was allegedly confusing to consumers. *Id*.  The court dismissed plaintiffs' NJCFA claims, however, because they failed to allege "whether they bought the [product] because they thought it contained antibiotics."  *Id*. at 506.

As in *Crozier*, Plaintiffs here do not assert that the "1.0 GB," "4.0 GB," or "up to 32 GB" statements led them to believe that they could use every byte of internal memory or use the SD cards however they pleased.  Nor do Plaintiffs allege that they bought their phones because they thought they could do such things.  Instead, in their haste to avoid making such a facially absurd claim, as discussed above, Plaintiffs resort to a hodge-podge of allegations about other phones, which they did not buy and many of which are not even at issue. Accordingly, Plaintiffs' claims must fail.  *Id*.; *Gerber*, 2014 WL 1310038, at *9.

**II.    The NJCFA Does Not Apply.**

The NJCFA claim fails for the additional and independent reason that choice of law principles bar application of the New Jersey statute to this action, brought by nonresident Plaintiffs.

Plaintiffs' claims, based on state law, require the Court to determine, at the outset, which law to apply to each claim.  *See Gerber*, 2014 WL 1310038, at *11. In a diversity action, the court applies the choice of law rules of the forum state. *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007).  New Jersey's choice of law analysis entails a two-step process.  First, a court must determine whether a conflict actually exists between the potentially applicable laws.  *See Lebegern v. Forman,* 471 F.3d 424, 430 (3d Cir. 2006).  "[I]f no conflict exists, the law of the forum state applies."  *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011).  If there is a conflict, the court must decide which state has the "most significant relationship" to the claim at issue, and then apply that state's law. *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, CIVA 08-5380, 2010 WL 1424014, at *3-4 (D.N.J. Apr. 8, 2010).

Here, a conflict exists between the New Jersey statute and the consumer protection statutes of Plaintiffs' home states, Michigan and Kansas.  Most notably, the NJCFA requires an award of treble damages for injuries sustained, N.J. Stat. Ann. § 56:8-19, whereas only actual damages are recoverable under the Michigan

and Kansas statutes.  *See* Mich. Comp. Laws. § 445.911(3); Kan. Stat. Ann. § 50-634.  Further, Plaintiffs' home states have the "most significant relationship" to Plaintiffs' consumer fraud claims.[8]  Because of the paucity of any detailed allegations regarding the "when, where, and how" of the alleged fraud, *see* § I.C., *supra,* it is not entirely clear how the significant relationship factors apply here. Yet, the Complaint admits that Liebler is a resident of Michigan and Carey is a resident of Kansas; suggesting that they purchased and used their phones in their home states.

Crucially, Plaintiffs make no attempt to allege *any* facts establishing contacts between New Jersey and their consumer fraud claims.  Indeed, the *only* alleged connection between this case and New Jersey is that LG US is headquartered there.

---

[8] Courts look to factors set forth in § 148 of the Restatement (Second) of Conflict of Laws to determine which state's law applies to fraud and misrepresentation claims.  *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013).  Under subsection (1) of § 148, when the "plaintiff's action in reliance took place in the state where the false representations were made and received," there is a presumption that the law of that state applies.  Under subsection (2), when the plaintiff's action in reliance takes place in a different state than where the false representations were made and received, courts weigh the following factors: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

It is well-settled that such a tenuous connection does not suffice to invoke the NJCFA where all other relevant factors point to application of another state's law. *Cooper*, 2008 WL 4513924, at *5, *aff'd*, 374 Fed. App'x 250 (3d Cir. Mar. 30, 2010) (refusing to apply New Jersey law to an Arizona resident who purchased a television for use in Arizona from an Arizona retailer, notwithstanding defendant company's presence in New Jersey); *see also Warma*, 2010 WL 1424014, at *3-4; *Knox v. Samsung Elecs. Am., Inc.*, No. 08-4308, 2009 WL 1810728, at *3-4 (D.N.J. June 25, 2009).[9]

## III.   Plaintiffs' Warranty Claims Fail.

Plaintiffs' breach of warranty claims fail for a variety of reasons.

### A.   No Express Warranty Existed.

With respect to either version of the L9 phone, the limited warranty contained in the owner's manual includes the following exclusion:  "No other express warranty is applicable to this product."  (Rottenberg Decl. Ex. H).  Thus, Plaintiff Liebler's claims based on LG US's purported additional statements are

---

[9] *See also Maniscalco*, 709 F.3d at 210 ("While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state.  New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions [under the NJCFA] brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.").

precluded by the unambiguous language of the written limited warranty. *Moulton v. LG Electronics USA, Inc.*, No. 11-4073, 2012 WL 3598760, at \*2 (D.N.J. Aug. 21, 2012); *Dicuio v. Brother Int'l. Corp.*, No. 11-1447, 2012 WL 3278917, at \*9-10 (D.N.J. Aug. 9, 2012).

      B.  <u>If an Express Warranty Existed, it Was Not Breached.</u>

Even if the limited warranty did not disclaim all other express warranties – which it did – LG US has not breached any promises with respect to product specifications.  Both Plaintiffs contend that LG US's "failure to provide Plaintiffs … with smartphones that included the advertised specifications constitutes a breach of its express warranty…."  Compl. ¶ 94.  Yet, Plaintiffs do not allege that the phones they purchased lacked the total capacity represented.  Nor do they allege that their phones could not accept SD cards.  Thus, even if LG US's statement that the phones had 1 and 4 GB of internal memory and were capable of accepting SD cards created an express warranty, LG US did not breach any such warranty because the phones Plaintiffs purchased in fact had the represented capacities and capabilities.  *See Simpson v. Widger*, 311 N.J. Super. 379, 390-91 (App. Div. 1998) (granting summary judgment for defendant where representations were true and thus could not "be the basis of a cause of action for breach of express warranty").

C.    <u>Michigan and Kansas Law Applies Here And Plaintiffs Lack Privity.</u>

The same choice of law analysis (as in § II., *supra*) applies to Plaintiffs'
breach of express warranty claims and compels the same result:  Michigan and
Kansas law govern.  Because such laws require privity between Plaintiffs and LG
US and no such privity is, or could be, alleged, a conflict exists and the express
warranty claims must be dismissed.

    1. *Choice of Law Analysis*

New Jersey law does not require privity of contract between the plaintiff and
the defendant to support an express warranty claim, *see Spring Motors
Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985), while
Michigan and Kansas law do.  *Montgomery v. Kraft Foods Global, Inc.*, 1:12-CV-
00149, 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012); *Prof'l Lens Plan,
Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 753 (1984).  Thus, in the recent case
*Dzielak v. Whirlpool Corp.*, CIV. 2:12-0089, 2014 WL 2758746, at *8-10 (D.N.J.
June 16, 2014), the court concluded that a conflict exists between New Jersey and
Michigan express warranty law.

For the reasons previously discussed (§ I.C., *supra*), Michigan and Kansas
have the "most significant relationship" to Plaintiffs' claims.[10]  *See Dzielak*, 2014

---

[10] Courts generally look to § 188 of the Restatement to determine which state's law
applies to breach of warranty claims.  *Feldman v. Mercedes-Benz USA, LLC*, 2:11-
CV-00984, 2012 WL 6596830, at *7 (D.N.J. Dec. 18, 2012).  Section 188 requires

WL 2758746, at *13-14 (concluding that the law of the State in which the plaintiffs lived and made their purchases had the most significant relationship to their implied warranty claims against manufacturer, where plaintiffs lacked privity with manufacturer); *see also Feldman v. Mercedes-Benz USA, LLC*, 2:11-CV-00984, 2012 WL 6596830, at *7 (D.N.J. Dec. 18, 2012) ("In holding that the law of Plaintiffs' home state applies, this Court follows other cases in this Circuit holding that warranty claims should be governed by the law of each consumers' home state.").

### 2.  *No Privity Exists Between Plaintiffs and LG US*

Whether applying Kansas or Michigan law, the result is the same; a critical element of any breach of express warranty claim is privity. *Montgomery*, 2012 WL 6084167, at *13; *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.,* 284 Mich. App. 617, 638 (2009); *Prof'l Lens.*, 234 Kan. at 753.

Here, no such privity is alleged.  Carey maintains that he purchased his phone from Wal-Mart, not LG US.  Compl. ¶ 44.  Likewise, Liebler fails to allege that he purchased his phone directly from LG US.  And neither Plaintiff otherwise alleges any contractual relationship with LG US.  "[N]o privity of contract exists

courts to consider: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  Restatement (Second) of Conflict of Laws, § 188. However, as neither Plaintiff alleges that he entered into a contract *with LG US*, these factors offer little guidance in this instance.

between a consumer, who buys from a retailer, and the manufacturer who has not sold a product directly to the consumer." *Montgomery*, 2012 WL 6084167, at *13; *accord Alongi v. Bombardier Recreational Prods., Inc.*, 12-13374, 2013 WL 718755, at *6-7 (E.D. Mich. Feb. 27, 2013); *Postal Presort, Inc. v. Midwest Single Source, Inc.*, 130 P.3d 1247, 2006 WL 851238, at *8 (Kan. Ct. App. 2006) (unpublished) (dismissing breach of express warranty claim due to lack of buyer/seller relationship between plaintiff and defendant).

## IV.   Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim fails principally because there was no "unlawful and deceptive conduct" from which LG US supposedly derived a benefit.  Compl. ¶ 101; *see also* § I., *supra*.  LG US promised smartphones that had 1 and 4 GB memories and that could support external SD cards.  This is exactly what Plaintiffs received.  *Toshiba*, 2009 WL 2940081, at *14.

Additionally, the lack of any course of dealing between Plaintiffs and LG US dooms Plaintiffs' unjust enrichment claim because Plaintiffs cannot plausibly allege that they provided any benefit to LG US.

To state a claim for unjust enrichment, a plaintiff must demonstrate that he conferred a benefit on the defendant and that an inequity would result if the defendant were permitted to retain that benefit.  *See Gerber*, 2014 WL 1310038, at

29

*14.[11]  At a minimum, a direct relationship or course of dealing between the parties must appear.  *See id.* at *15 ("Because the Complaint contains no facts to support a plausible unjust enrichment claim sounding in contract or quasi-contract, Plaintiffs' unjust enrichment claim is dismissed with prejudice.").

Here, Plaintiffs allege no contractual or quasi-contractual relationship with LG US.  They do not claim to have purchased their phones directly from LG US and do not allege facts establishing direct contact or a course of dealing with LG US.  Indeed, Carey makes clear that he bought his phone from Wal-Mart, not LG US.  This admission is fatal to Plaintiffs' unjust enrichment claims.[12]  *See Dzielak*, 2014 WL 2758746, at *16 ("When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer.") (quotation omitted); *Cooper,* 2008 WL 4513924, at *10 (dismissing an unjust enrichment claim where consumer purchased product through a retailer, as no relationship conferred a benefit on manufacturer).

---

[11] Under Michigan and Kansas law, these same elements are required to state an unjust enrichment claim.  *See Lipov v. Louisiana-Pac. Corp.*, 1:12-CV-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013); *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1151 (D. Kan. 2006).  Because no conflict exists between the potentially applicable laws, New Jersey law should apply to Plaintiffs' unjust enrichment claims.

[12] To the extent that LG US statements regarding phone specifications, or the limited warranty, are construed as a "contract" between the parties – which they are not – this too dooms their unjust enrichment claims since such claims cannot be maintained where an express contract exists between the parties.  *Caputo v. Nice-Pak Prod., Inc.*, 300 N.J. Super. 498, 507 (App. Div. 1997).

The best that Plaintiffs can muster is that LG US has "received and retained money belonging to Plaintiffs … as a result of its unlawful and deceptive conduct," Compl. ¶ 101, but they offer no facts to substantiate this assertion.  This conclusory allegation does not "raise [Plaintiffs'] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Moreover, this same allegation could be made by any end consumer asserting an unjust enrichment claim against the original manufacturer, and both *Dzielak* and *Cooper*, cited above, squarely preclude such claims.

## V.    The Economic Loss Doctrine Applies to Plaintiff Liebler's Claims.

Plaintiff Liebler's fraudulent inducement and negligent misrepresentation claims fail because the product specifications provided were not false and involved no concealment of information.  *See* § I., *supra*.  Additionally, those claims fail under the "economic loss" doctrine.

The economic loss doctrine "precludes a plaintiff from bringing an action in tort where damages arise out of the commercial sale of goods and the losses incurred are purely economic."[13]  *Irwin Seating Co. v. IBM Corp.*, 1:04CV568,

_____

[13] In contrast to Michigan law, under New Jersey law the economic loss doctrine does not apply to claims for fraud or negligent misrepresentation.  *Coastal Group, Inc. v. Dryvit Sys., Inc.*, 274 N.J. Super. 171, 177-79 (App. Div. 1994); *see also Kirtley v. Wadekar*, No. 05-5383, 2006 WL 2482939, at *4 (D.N.J. Aug. 25, 2006). A conflict thus exists between Michigan and New Jersey law and, as previously discussed, Michigan has the most significant relationship to Liebler's fraud claims. Therefore, Michigan law should apply to these claims.

2005 WL 1475390, at *12 (W.D. Mich. June 22, 2005), *aff'd*, 306 Fed. App'x 239 (6th Cir. 2009); *accord Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602-03 (E.D. Mich. 2010) (treating fraudulent inducement and negligent representation as tort claims and concluding that such claims were barred under economic loss doctrine); *Neibarger v. Universal Coops.*, 439 Mich. 512, 528 (1992).

Here, Plaintiff Liebler's alleged damages arise from his purchase of a smartphone—a commercial transaction—and his purported loss is purely economic.  Compl. ¶ 77 ("Plaintiffs . . . have each suffered an injury in fact and lost money in justifiable reliance on LG's misrepresentations . . . ."), ¶ 87 (alleging that Plaintiffs have "suffered damages in the form of monies paid to purchase the LG Phones").  Plaintiff's effort to dress up what is essentially an economic loss claim into claims sounding in tort must fail.

## VI.  Plaintiffs Lack Standing to Pursue Injunctive Relief and Claims Relating to Phones They Never Purchased.

Plaintiffs lack constitutional standing for significant portions of the claims they seek to bring:  their claims for injunctive relief and claims regarding phones they never purchased should be dismissed because, as to each, Plaintiffs cannot establish the required injury in fact.  "Standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution."

*Independent Enterp. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To have Article III standing, the plaintiff must establish "injury in fact."  *McNair v. Synapse Grp.*, 672 F.3d 213, 223 (3d Cir. 2012) (citations omitted).  That "injury in fact" must be "concrete and particularized."  *Lujan*, 504 U.S. at 560.

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  "Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action."  *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000).

A.  Plaintiffs Lack Standing to Pursue Injunctive Relief.

Plaintiffs' claims for injunctive relief should be dismissed because Plaintiffs do not allege that they will suffer future injury.  Where prospective relief is sought, a plaintiff must show he is "likely to suffer future injury" from the defendant's conduct.  *McNair*, 672 F.3d at 223 (citations omitted).  Past exposure "to illegal

conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Id*. (citations and quotations omitted).  In the class action context, the threat of future injury "must be satisfied by at least one named plaintiff." *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994, at *7 (D.N.J. Aug. 23, 2013).

Plaintiffs here seek injunctive relief, Compl. ¶ 66; Prayer for Relief ¶ C, but do not allege that they will suffer any future injury from LG US's conduct.  Nor do they allege that they intend to purchase LG phones in the future.[14]  Based on these pleading deficiencies, the Court should dismiss Plaintiffs' request for injunctive relief.  *Gerber*, 2013 WL 4517994, at *7 (dismissing request for injunctive relief for lack of standing where  plaintiffs failed to allege likelihood of future injury from defendant's allegedly deceptive marketing campaign).

---

[14] Even if Plaintiffs had made such an allegation, they would still lack standing because the "capable of repetition yet evading review" doctrine requires a reasonable showing that the same plaintiffs "will again be subjected to the alleged illegality." *McNair*, 672 F.3d at 226 (dismissing injunctive relief claims for lack of standing where the plaintiffs alleged that they "may, one day" become the defendant's customers again). The Complaint does not address this requirement for standing.

B.  Plaintiffs Lack Standing to Assert Claims as to Phones They Never Purchased.

Plaintiffs assert claims relating to phone models they never purchased, without establishing any similarity between the phones they purchased and statements or practices concerning the other phone models.  Plaintiffs assert claims as to eight phone models from different product lines but allege to have purchased only two of those phones – the Optimus L9 and the L35G.  Plaintiffs have not been injured by, and thus lack standing to assert claims as to, phones they did not purchase – the Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, and Motion 4G phones.  *E.g., Hemy*, 2011 WL 6002463, at *11 (dismissing plaintiffs' claims regarding products not purchased for failure to allege injury-in-fact).

In assessing constitutional standing, the general starting point is that plaintiffs must personally suffer the injury for which they sue.  "[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured."  *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *accord Lujan,* 504 U.S. at 563.  Plaintiffs cannot show injury as to products they never bought.

While it may be appropriate in some circumstances to defer the question of whether representative plaintiffs may assert claims as to products they did not purchase until the class certification stage of the litigation, *see Stewart*, 2012 WL 4168584, at *16, dismissal of such claims now is warranted here under Rule

12(b)(1), because the Complaint fails to allege any nexus between the phones Plaintiffs bought and the ones whose purchasers Plaintiffs purport to represent.

To claim standing to represent class members who purchased different products, plaintiffs must demonstrate either that the injury in fact suffered by absent class members stems from the same conduct allegedly directed at representative plaintiffs, or that the products they purchased are similar to those purchased by plaintiffs.  Here, Plaintiffs make only the barest of conclusory allegations, in a footnote, that the representations and omissions regarding all of the phones that are the subject of their Complaint "are substantially the same, are presented in a nearly identical manner, and harm consumers in a substantially similar manner."  Compl. ¶ 1 n.2.  But this footnote does not constitute the "specific facts" that must be pled to invoke federal jurisdiction.  *Anjelino*, 200 F.3d at 88; *see also Iqbal*, 556 U.S. at 686 ("the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context").  This is especially true where, as here, the consumer fraud claims are subject to Rule 9(b)'s heightened pleading standard.  *Stewart*, 2012 WL 4168584, at *7; *Gray*, 2009 WL 1617930, at *2-3.

What exactly was the Defendant's alleged conduct or representations as to these separate products?  How did such conduct affect other class members, and in what sense is such conduct similar to the allegations regarding the two products

36

Plaintiffs did purchase?  None of these critical questions are addressed in the Complaint.

The rationale for deferring the standing issue to the class certification stage—as articulated in cases such as *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994), *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975), and *Stewart*, 2012 WL 4168584, at *15-16—does not apply where the Complaint makes only the barest conclusory allegations of similarity.  Unlike the allegations in *Baby Neal*, Plaintiffs do not challenge a uniform policy or practice that merely injures absent class members differently.  Nor do they challenge identical agreements, as in *Haas*.

In contrast to the conclusory assertion of similarity in the Complaint, in *Stewart*, the pleadings contained detailed allegations regarding the "fat free" statements made about various milk products at issue in the litigation, including how the statements were misleading.  For example, the complaint alleged that the "fat free" statements appeared in nine different places on each of the products' cartons and that all the products were marketed as tasting "as rich and creamy" as 2% milk.  *Stewart*, 2012 WL 4168584, at *1 (citing ¶ 35, 37).  The complaint also contained allegations about how the "fat free" statements were misleading as to each of the three products.  *Id*. (citing ¶ 39 (alleging that the products contained an added ingredient that is fat, but failed to follow that ingredient with a disclaimer

that it added fat to the products), ¶ 61 (explaining that the nutrition fact labels for each of the three products showed they contained 1 gram of fat)).

Where a plaintiff seeks to represent the claims of absent class members who purchased different products, at a minimum, the kinds of details alleged in *Stewart* must appear. Here, Plaintiffs come nowhere close to providing such specific allegations. They fail to allege with any specificity that the products they did not purchase are similar to those that they did purchase, or that the injuries of absent purchasers stem from the same conduct about which they complain. As such, Plaintiffs lack standing to assert claims as to the phones they did not purchase and their claims as to the Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, and Motion 4G phones must be dismissed.

## VII.   Plaintiffs Cannot Seek Relief on Behalf of Putative Class Members.

Because they fail to state any viable individual claims against LG US, the Plaintiffs cannot seek relief on behalf of putative class members. *See Donachy v. Intrawest U.S. Holdings, Inc.*, CIV.A. 10-4038, 2012 WL 869007, at *1 (D.N.J. Mar. 14, 2012) ("Because this Court dismisses Plaintiffs' individual claims, and class allegations are not viable unmoored to any viable individually named Plaintiffs, Plaintiffs' class claims are also dismissed."). As a result, the class claims asserted in the Complaint must also be dismissed.

## CONCLUSION

For the foregoing reasons, LG US's motion to dismiss should be granted and

the Complaint dismissed, with prejudice.

DATED:   September 15, 2014

Respectfully submitted,


By: /s/ Mark M. Rottenberg
Mark M. Rottenberg, Esq.
mrottenberg@rlrpclaw.com
Jonathan S. Hershberg, Esq.
jhershberg@rlrpclaw.com
ROTTENBERG LIPMAN RICH, P.C.
Park 80 West Plaza One
250 Pehle Avenue, Suite 101
Saddle Brook, New Jersey 07663
Phone:  (201) 490-2022

PARK JENSEN BENNETT LLP
Tai H. Park (*pro hac vice*)
tpark@parkjensen.com
630 Third Avenue, 7th Floor
New York, NY  10017
Phone: (646) 200-6300
Fax: (646) 200-6301

EIMER STAHL LLP
Pamela R. Hanebutt (*pro hac vice*)
phanebutt@eimerstahl.com
Susan M. Razzano (*pro hac vice*)
srazzano@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Phone: (312) 660-7600
Fax: (312) 698-1718

*Attorneys for Defendant*
*LG Electronics U.S.A., Inc.*