## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LIEBLER, and GREG CAREY, individually and on behalf of all others similarly situated, | Case No. 14-CV-03500-JLL-JAD |
| *Plaintiffs*, | |
| *v.* | |
| LG ELECTRONICS U.S.A., INC., a Delaware corporation, | |
| *Defendant*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
## LEAVE TO FILE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................... 1

**RELEVANT FACTS** ............................................................ 3

**ARGUMENT** .................................................................. 5

**I.   CRIARIS'S MOTION FOR LEAVE TO FILE THE SAC
      SHOULD BE GRANTED.** ................................................. 5

   **A.   Criaris Adequately Pleads Each Element of his
        Fraud-by-Omission Claims, and Therefore, They are
        not Futile.** .................................................. 7

      1.   The SAC sufficiently alleges that LG's omissions
           were unlawful and caused Criaris to suffer an
           ascertainable loss. ........................................ 8

         i.    *Criaris sufficiently alleges that LG engaged in
               unlawful conduct.* ..................................... 9

         ii.   *LG's conduct caused Criaris to suffer an
               ascertainable loss.* ................................... 12

      2.   The SAC includes sufficient allegations regarding LG's
           knowing concealment of material facts that it had a
           duty to disclose, as well as its intention that Criaris rely
           on its omissions by purchasing a LG Phone. ................ 13

   **B.   Criaris's Unjust Enrichment Claim is Not Futile.** ............ 17

   **C.   Criaris has Standing to Pursue Claims on Behalf
        of Other Individuals Who Purchased Materially Identical
        LG Phones.** ................................................... 19

**CONCLUSION** ................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 US 662 (2009) ....................................................................... 16

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d. Cir.1994) ........................ 20

*Bussiculo v. Babcock Power, Inc.*, No. CIV.A. 13-7192 JLL,
    2014 WL 4611544 (D.N.J. Sept. 15, 2014) .................................................... 6

*Byrne v. Weichert Realtors*, 290 N.J.Super. 126 (App.Div.1996) .......................... 11

*Cooper v. Samsung Electronics Am., Inc.*, No. CIV.A.07-3853 JLL,
    2008 WL 4513924 (D.N.J. Sept. 30, 2008)
    *aff'd*, 374 F. App'x 250 (3d Cir. 2010) ......................................................... 11

*Demmick v. Cellco P'ship*, No. CIV.A.06-2163 JLL,
    2008 WL 750547  (D.N.J. Mar. 19, 2008) ...................................................... 6

*Demmick v. Cellco P'ship*, No. CIV.A. 06-2163 JLL,
    2010 WL 3636216 (D.N.J. Sept. 8, 2010) ...................................................... 7

*Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW,
    2012 WL 3278917 (D.N.J. Aug. 9, 2012) .................................................... 20

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) ........................................................ 11, 15

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ........................................ 11

*Glauberzon v. Pella Corp.*, No. CIV.A. 10-5929 JLL,
    2011 WL 1337509 (D.N.J. Apr. 7, 2011) ..................................................... 16

*Harkes v. The Accessory Corp., Inc.*, No. 2:9-cv-02566,
    2010 WL 919616 (D.N.J. March 10, 2010) .................................................... 8

*Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013)
    *recon. den.*, 2013 WL 1890276 (D.N.J. May 3, 2013) .................... 8-9, 16, 20

*Heffernan v. City of Paterson*, 2 F.Supp.3d 563 (D.N.J. 2014) ............................... 6

*Hoffman v. Liquid Health Inc.*, No. CIV. 14-01838 SRC,
2014 WL 2999280 (D.N.J. July 2, 2014) .................................................. 9, 12

*In re Gerber Probiotic Sales Practices Litig.,* No. CIV.A. 12-835 JLL,
2014 WL 5092920 (D.N.J. Oct. 10, 2014) ............................................. 20-21

*In re Phillips/Magnavox Television Litig.*, No. CIV.A 09-3072,
2010 WL 3522787 (D.N.J. Sept. 1, 2010) ............................................. 10, 15

*Lightning Lube v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993) .................................. 15

*Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004) ............................................... 5

*Lopez v. CSX Corp.*, 1 F.3d 1406 (3d Cir.1993) ............................................. 6

*Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582 DMC JBC,
2013 WL 6047556 (D.N.J. Nov. 12, 2013) ............................................. 20-21

*Lynch v. Tropicana Products, Inc.*, No. 2:11-CV-07382 DMC,
2013 WL 2645050 (D.N.J. June 12, 2013) ............................................. 18-19

*Mango v. Pierce-Coombs*, 370 N.J. Super. 239 (App. Div. 2004) ......................... 14

*Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494
(D.N.J. 2009) .................................................................. 10, 14, 17

*McNair v. Synapse Grp.*, 672 F.3d 213 (3d Cir. 2012)..................................... 20

*Mendez v. Avis*, No. 11-6537, 2012 WL 1224708
(D.N.J April 10, 2012)............................................................ 9, 17

*Nafar v. Hollywood Tanning Sys., Inc.*, 06-CV-3826 DMC,
2007 WL 1101440 (D.N.J. Apr. 10, 2007)........................................ 9, 14, 15

*New Jersey Citizen Action v. Schering–Plough Corp.,* 367 N.J.Super. 8
(N.J. Super.Ct.App.Div. 2003) ...................................................... 8-9

*S Pontrelli v. MonaVie, Inc.*, No. 13-cv-4649, 2014 WL 4105417
(D.N.J. Aug. 19, 2014) ...................................................... 12, 13, 18

iii

*Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) .......................................................... 5

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011) ........................... 8

*Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp.2d 192
  (D. N.J. 2012) ................................................................................... 18-19

*Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537 (D.N.J. 2013).. 7,11

*Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547 (Ch. Div. 2001)......... 11

**Statutes and Rules**

Fed. R. Civ. P. 9 ....................................................................................... 2, 8, 16-17

Fed. R. Civ. P. 12 ................................................................................................ 5

Fed. R. Civ. P. 15 .......................................................................................... 2, 5-6

N.J.S.A. 56:8-2 ................................................................................................. 11

## INTRODUCTION

This case challenges Defendant LG Electronics U.S.A., Inc.'s ("Defendant" or "LG") deceptive marketing and sale of several of its smartphone devices (the "Phones").[1] Specifically, LG represented to consumers that the Phones had certain storage capacities and capabilities, but intentionally failed to inform them that (i) it pre-loaded the Phones with files and applications (or "Apps") that used up between 60-89% of internal storage space, and (ii) it designed the Phones to block consumers from transferring space-hogging Apps to external storage cards (the "SD cards"). As a result, consumers of the Phones were misled into believing that they would have access to far more of their Phones' memory and the ability to use external SD cards to store space-hogging Apps, and paid more for the Phones than they would have had LG informed them of the Phones' true storage capacities and capabilities.

After LG moved to dismiss the First Amended Complaint ("FAC"), Plaintiffs David Liebler and Greg Carey moved for leave to file a Second Amended Complaint (the "Motion" and the "SAC," respectively), in order to name Michael Criaris as the party-Plaintiff, and to cure many of the supposed defects in

---

[1]    While Criaris purchased LG's Optimus L9 phone, he seeks to represent a class of individuals who purchased the following LG phone models: Optimus L9, Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, Motion 4G, and L35G, as LG's omissions regarding their storage capacities and capabilities, and the injuries they caused, are substantially the same. As such, here (as in the SAC), "Phones" refers collectively to each of these models of LG's smartphones.

the pleadings LG identified. Although those sorts of amendments are permitted almost as a matter of course under Federal Rule 15's liberal standards, LG opposed Plaintiffs' Motion, arguing that any amendment of the pleadings would be futile. Each of LG's arguments miss their mark.

Foremost, Criaris has pleaded his fraud-based claims[2] with more than sufficient particularity to satisfy Rule 9(b)'s heightened pleading requirements. Contrary to LG's assertions, because Criaris's claims are based on LG's fraudulent *omissions*—rather than express misrepresentations—he need only allege facts demonstrating that the omissions had the capacity to mislead and that they caused an ascertainable loss (to state his NJCFA claim), and that LG had a duty, but failed, to disclose a material fact (to state his fraudulent omission claim). Criaris does just that. Similarly, and given that Rule 9(b) permits elements of "knowledge" and "intent" to be pled generally, Criaris's allegations that LG intended consumers to rely on its omissions, and facts supporting that conclusion, are sufficient.

Next, and again contrary to LG's assertions, courts in this District have consistently held that a plaintiff need not purchase a product directly from a manufacturer in order to state a claim for unjust enrichment. Rather, it is enough

---

[2]     Criaris alleges two counts of fraud against LG as result of its material omissions: first, under the New Jersey Consumer Fraud Act (the "NJCFA"), and second, under a New Jersey common law fraudulent omission theory. Except where separately noted, like Defendant, Plaintiffs refer to Criaris's fraud claims collectively throughout their brief.

that Criaris alleges that LG was responsible for the unlawful conduct at issue—i.e., the fraudulent omissions—and that LG benefited as a result—i.e., in the form of the monies Criaris and the putative class paid to purchase the Phones.

Finally, LG's contention that Criaris cannot represent class members who purchased different Phones fails as well. Where, as here, a named-plaintiff suffers the same injury as the putative class, as a result of the defendant's same uniform misconduct, the fact that the products each class member purchased varied slightly does not affect the named-plaintiff's standing to sue on their behalf.

For all of these reasons, LG has failed to meet its burden to demonstrate that an amendment would be futile, and Plaintiffs' Motion for Leave should be granted.

## RELEVANT FACTS

### *The Android Operating System and LG's Marketing of its Phones' Storage Capacities and Capabilities*

Defendant LG is one of the world's leading manufacturers of smartphones that run on the "Android" operating system ("OS"). (SAC ¶¶ 1, 13.) The Android OS allows users to play music and videos, access the Internet, and download more than a million Android Apps on their smartphones. (*Id.* ¶ 14.) The ability to download Apps is crucial to consumers, and regarded as an "'integral part of the smartphone experience.'" (*Id.* ¶ 15.) In 2013 alone, consumers purchased over $1.2 billion in Apps from the Google Play store—the leading Android App marketplace. (*Id.* ¶¶ 15, 20.)

Knowing that consumers demand access to Apps, LG has continuously emphasized its Phones' abilities to provide access to them in its marketing and sales materials. (*Id.* ¶ 22.) Specifically, when its Phones were first released, LG touted their ability to "'bring app[s] to the masses,'" and as "'enhanc[ing the] mobile phone experience'" by providing "'access to over 20,000 applications.'" (*Id.* ¶¶ 16, 22.) Additionally, LG designs its Phones with a slot that accepts external SD cards—to be used when a Phone's internal storage space is full[3]—and represents (on its websites and packaging, and in its owner manuals) that its SD cards can utilize "'up to 32 GB'" in external storage. (*Id.* ¶ 29.)

### *LG Intentionally Omits Material Facts About its Phones' Storage Capacities and Capabilities*

Despite knowing that the ability to download and transfer Apps is material to consumers in the smartphone market, LG intentionally frustrates its Phone users' ability to access and utilize Apps in two regards. (*Id.* ¶¶ 1, 3.) First, LG pre-fills its Phones' internal storage with dozens of (and sometimes more than 60) unwanted and undeletable Apps (often referred to as "bloatware") and designs the Phones so that user-selected Apps (i.e., the Apps that the user actually does want) can only be installed onto a small block of space. (*Id.* ¶¶ 23-27.) Second, LG

---

[3]   "Internal storage space" is a fixed amount of memory—i.e., memory that cannot be upgraded or replaced—inside the Phone that houses the operating system, along with other files and media. "External storage space" is a feature that allows for an optional and removable storage card (e.g., a SD card) to supplement the internal storage. (SAC ¶ 3, fn. 4.)

blocks Apps from being installed onto SD cards. (*Id.* ¶¶ 29-35.) As a result of these actions, consumers receive phones with as much as 60-89% of their internal storage already spoken for, with no ability to transfer or save space-hogging Apps to another location. (*Id.* ¶¶ 28.)

LG purposely includes this so-called "bloatware" on its Phones and blocks the transfer of Apps to increase profits, promote its own brand, and to appease its business partners. (*Id.* ¶ 38.) The problem, however, is that LG does not inform consumers of these practices and in fact, intentionally fails to disclose them. (*See*, *e.g.*, *Id.* ¶¶ 18, 23, 47, 72, 82.) As a direct result of LG's failure to disclose this information, thousands of consumers purchase LG's Phones expecting that they operate like any other smartphone—i.e., that they allow consumers to utilize more than 11-40% of their Phones' internal memory—and ultimately, pay significantly more than what they are worth. (*Id.* ¶¶ 6, 37, 46, 69.)

## ARGUMENT

### I.   CRIARIS'S MOTION FOR LEAVE TO FILE THE SAC SHOULD BE GRANTED.

Leave to amend under Rule 15 should be "granted freely when justice so requires…." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted"). Leave to amend should only be denied where amending would

be futile, the request for leave to amend is untimely, and/or the opposing party would suffer undue prejudice as a result of the amendment. *See Demmick v. Cellco P'ship*, No. CIV.A.06-2163 JLL, 2008 WL 750547, at *2 (D.N.J. Mar. 19, 2008) (Hon. Linares, J.) ("The potential of prejudice to the nonmoving party is the touchstone for the denial of the amendment pursuant to Rule 15(a).") (citing *Lopez v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993)); *Heffernan v. City of Paterson*, 2 F.Supp.3d 563, 578 (D.N.J. 2014); *Bussiculo v. Babcock Power, Inc.*, No. CIV.A. 13-7192 JLL, 2014 WL 4611544, at *4 (D.N.J. Sept. 15, 2014) (Hon. Linares, J.) (explaining that the "liberal approach" of Rule 15 is to "ensure that a particular claim [is] decided on the merits rather than on technicalities") (citation omitted).

Here, LG focuses its attacks on the supposed futility of the proposed SAC, arguing that the amended complaint still fails to state any claims for relief. (Opp. at 5-14.)[4] Putting aside that "the futility analysis does not require the parties to engage in th[is] [type] of substantive motion practice," *see Demmick*, 2008 WL 750547, at *2 (citation omitted), as discussed in detail below, none of the arguments offered by LG withstand scrutiny.

---

[4]   LG does not argue that it will suffer any prejudice if Criaris is granted leave to file the SAC, nor is the requested amendment untimely. Indeed, this case is still in its infancy, no deadline to amend the pleadings or join additional parties has been set, no discovery has taken place, and the purpose of the amendment is to cure the supposed defects LG identified in the FAC and narrow the issues to be litigated.

### A.   Criaris Adequately Pleads Each Element of his Fraud-by-Omission Claims, and Therefore, They are not Futile.

First, LG argues that permitting Criaris's NJCFA and common law fraud-by-omission claims to proceed would be futile because the SAC does not meet (i) "the specificity require[ments of] Rule 9(b)," (ii) fails to allege "what the packaging [of the Optimus L9] actually said or how it gave rise to [Criaris's] false expectations," and (iii) includes only "formulaic recitations" in regards to LG's intent to mislead. (Opp. at 5, 7, and 13, respectively.) Each of these arguments fails.

To state a claim under the NJCFA, a plaintiff must show: (1) unlawful conduct by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Demmick v. Cellco P'ship*, No. CIV.A. 06-2163 JLL, 2010 WL 3636216, at *15 (D.N.J. Sept. 8, 2010) (Hon. Linares, J.). Further, and as here, when a fraudulent omission is alleged, the plaintiff must also plead facts sufficient to demonstrate that the defendant (4) knowingly concealed (5) a material fact (6) with the intention that the plaintiff rely upon the concealment. *Id.* In addition to these requirements, to state a claim for fraudulent omission under New Jersey common law, Criaris must allege LG's duty to disclose the materials facts in question. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (recognizing that the difference between an omission claim under the NJCFA and a common law

fraudulent omission claim is that the plaintiff must plead "reasonable reliance" and a "duty to disclose").

And, while Rule 9(b)'s heightened pleading requirements apply to both of Criaris's fraud-based claims, the rule "allows essential elements of omission [claims] to be alleged [more] generally." *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 652 (D.N.J. 2013) *recon. den.*, No. 12-CV-00608 WHW, 2013 WL 1890276 (D.N.J. May 3, 2013). Indeed, so long as the allegations "provide[] adequate notice to an adverse party to enable it to prepare a responsive pleading," Rule 9(b)'s pleading standards will be satisfied. *Harkes v. The Accessory Corp., Inc.*, No. 2:9-cv-02566, 2010 WL 919616, at *5 (D.N.J. March 10, 2010).

As discussed in detail below, Criaris plainly alleges each of the elements of his fraud-based claims with the requisite specificity.

        1.      <u>The SAC sufficiently alleges that LG's omissions were unlawful and caused Criaris to suffer an ascertainable loss</u>.

To start, there can be no dispute that Criaris alleges the first three elements of his fraud-based claims. As to the first element—unlawful conduct—the SAC must allege facts to show that the business practice in question is "misleading and stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (citing *New Jersey Citizen Action v. Schering–Plough Corp.*, 367

N.J.Super. 8, (N.J. Super.Ct.App.Div. 2003)). To sufficiently plead the second and

third elements—ascertainable loss and causation—the SAC must demonstrate that

Criaris was "misled into buying a product that was ultimately worth less to [him]

than the product he was promised,"—that he "did not get the benefit of the

bargain"— *id*. at 99-102, and that the he suffered such "loss…as a result of the []

unlawful conduct." *Hoffman v. Liquid Health Inc.*, No. CIV. 14-01838 SRC, 2014

WL 2999280, at *8 (D.N.J. July 2, 2014).

> i. *Criaris sufficiently alleges that LG engaged in unlawful conduct.*

As to the first element, Criaris alleges that LG engaged in unlawful conduct

by "omitting two material facts about the storage capacity of its [smart phone]

devices:" that it (1) "pre-load[s] its phones with unwanted apps and other files that

use up between 60-89% of the phones' internal storage," and (2) "entirely blocks

consumers from transferring apps to [SD cards]." (SAC ¶¶ 1, 3 7, 23, 29); *see*, *e.g.*,

*Mendez v. Avis*, No. 11-6537, 2012 WL 1224708, at *13-14 (D.N.J April 10, 2012)

(Hon. Linares, J.) (finding that plaintiff sufficiently pled an "unlawful" omission

under the NJCFA where he alleged that defendants failed to inform him that they

pre-loaded their rental cars with e-Tolling devices for which he would be charged);

*Nafar v. Hollywood Tanning Sys., Inc.*, 06-CV-3826 DMC, 2007 WL 1101440, at

*8 (D.N.J. Apr. 10, 2007); *Harnish*, 931 F. Supp. 2d at 652 (finding plaintiff

sufficiently alleged an unlawful omission where defendant failed to disclose "the

rate at which recent graduates c[ould] obtain [] employment" as it was a "plausibly material" fact and "cause[d] students to pay inflated tuition").

Additionally, the SAC demonstrates that LG's omissions had the ability to mislead consumers and "stood outside the norm of reasonable business practices" because (1) equivalent phones—i.e., those that lacked the capability to store Apps—cost significantly less (SAC ¶¶ 51, 69), (2) LG constantly touted itself as bringing "'apps to the masses,'" "'provid[ing] easy integration with Google$^{TM}$ apps and widgets,'" and "'allowing [consumers] to browse thousands of apps [] from games and books to camera flashes and coupons,'" despite knowing it could not deliver on those promises (*id.* ¶¶ 2, 16, 22), and because (3) in regards to the SD cards, LG previously advertised that they allowed for such storage. (*Id.* ¶¶ 33, 36); *see, e.g.*, *In re Phillips/Magnavox Television Litig.*, No. CIV.A 09-3072, 2010 WL 3522787, at *2 (D.N.J. Sept. 1, 2010) (finding that plaintiffs sufficiently pled an unlawful omission where defendants' past representations about its televisions' capabilities could have mislead a reasonable consumer); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 501-02 (D.N.J. 2009) (finding that plaintiffs' allegations that defendant knew of, but failed to disclose, a material defect were "sufficient to constitute an unlawful act under the [NJ]CFA").

Nevertheless, LG argues that Criaris's claims are doomed to fail because the SAC does not allege which of its statements "actually misled [him.]" (Opp. at 9.)

Understandably, those sorts of allegations are not necessary to plead an omission

claim. Rather, proof of an omission "of a fact material to the transaction is

sufficient to establish a violation of the [NJCFA]," as it is "the *capacity* to mislead

that is critical." *Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 554-55,

(Ch. Div. 2001) (citing *Byrne v. Weichert Realtors*, 290 N.J.Super. 126, 136

(App.Div.1996) (emphasis added).[5] Nor is Criaris required to demonstrate actual

reliance to state an NJCFA claim. *See, e.g.*, *Cooper v. Samsung Electronics Am.,*

*Inc.*, No. CIV.A.07-3853 JLL, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008)

*aff'd*, 374 F. App'x 250 (3d Cir. 2010) ("The NJCFA dispenses with requiring a

plaintiff to show reliance.") (Hon. Linares, J.). It is enough that the SAC alleges

that there is "a causal nexus between the unlawful act and the ascertainable loss."[6]

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543,

560 (D.N.J. 2013). Likewise, in the case of common law fraud—where

"reasonable reliance" is usually required—allegations regarding Criaris's reliance

on LG's silence is sufficient so long as he can demonstrate that LG's omissions

would be material and that LG had "a duty to disclose," *id; see e.g.*, *Stockroom*,

---

[5]     As explained in Section I.A.2, *infra*, LG's omissions here were misleading
to a reasonable consumer.
[6]     Indeed, if plaintiffs were required to make such allegations, it would be
impossible to state an omission claim. *See, e.g.*, *Frederico v. Home Depot*, 507
F.3d 188, 202 (3d Cir. 2007) ("Unlawful practices [under the NJCFA] fall into
three general categories: affirmative acts, knowing omissions, and regulation
violations.") (citing N.J.S.A. 56:8-2).

941 F. Supp. 2d at 546, which as discussed in detail below (*infra* Section I.A.2), Criaris does here.

ii.   *LG's conduct caused Criaris to suffer an ascertainable loss.*

Criaris further alleges that by inducing him to purchase LG's Optimus L9 and SD cards, LG caused him to suffer an ascertainable loss in the form of the monies he paid to purchase those items. That is, Criaris would not have purchased the products (or would have paid less to do so) had LG disclosed that 60% of his Phone's memory was unusable and/or that Apps could not be externally stored on SD cards. (SAC ¶¶ 37, 50-51, 69, 81.) The SAC even goes so far as to quantify that loss, explaining that "the difference in value between the product [he] expected and the one [he] received" was approximately $172. (*See id.* ¶ 51 (comparing the cost of the phone Criaris purchased, a LG Optimus L9 at the cost of $250.00, to the T-Mobile 768 at the cost of $78.00, as it is "a similar phone to what Plaintiff actually received" given its "small amount of internal space and cannot install [] Apps to an external memory card.")); *see Hoffman*, 2014 WL 2999280, at *6 (holding that plaintiff adequately pled an ascertainable loss where he alleged that "for the amount of money he spent, he received something far less than and far different from what he reasonably expected"); *S Pontrelli v. MonaVie, Inc.*, No. 13-cv-4649, 2014 WL 4105417, at *6 (D.N.J. Aug. 19, 2014) (finding plaintiff's allegations that she paid a "price premium" sufficient to "satisfy the

ascertainable loss requirement").

Accordingly, Criaris sufficiently alleges the unlawful act, ascertainable loss, and causation elements of his fraud claims, and the proposed amendments are not futile.[7]

> 2. The SAC includes sufficient allegations regarding LG's knowing concealment of material facts that it had a duty to disclose, as well as its intention that Criaris rely on its omissions by purchasing a LG Phone.

Criaris also sufficiently alleges the remaining elements of his fraud claims—i.e., that LG (1) concealed material facts, (2) did so knowingly, despite that it had a duty to disclose them, and that it (3) intended that consumers would rely upon its omissions.

First, the SAC includes allegations demonstrating that LG's omissions were material to both Criaris and other reasonable consumers. Indeed, Criaris explains in detail that the ability to download and store Apps on the Phones was "one of the primary reasons consumers purchase smartphones" and cites to industry articles describing why Apps are an "integral to the smartphone experience" and a

---

[7]     Although LG does not suggest otherwise, the allegations in the SAC likewise go far beyond Rule 9(b)'s requirement that Criaris allege the "who, what, when, where, and how" of his specific purchase. *S Pontrelli*, 2014 WL 4105417, at *5; (SAC ¶¶ 47-50 (alleging that in June 2013 (the "when"), Criaris purchased LG's Optimus L9 phone "at a retail store in New Jersey" (the "what" and "where"), and that he was damaged when, relying on LG's omission (the "who"), he paid $250.00 for his phone and between $10-20 for his SD cards—far more than they were worth (the "how")).)

principal feature that distinguishes them from less advanced "feature phones." (SAC ¶¶ 2-3, 18, 20.) LG itself concedes as much in its own marketing campaigns, touting its ability to "'bring apps to the masses'" and as a way to "'enhance the mobile experience.'" (*Id.* ¶ 22); *see also Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251, 851 A.2d 62, 69 (App. Div. 2004) (explaining that a material fact or omission exists when "a reasonable person would attach importance to [it] in determining a choice of action[, or] the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action").[8]

Next, the SAC also demonstrates that LG "knowingly concealed" the truth about its Phones' storage capacities and capabilities by loading the Phones with unwanted Apps and blocking Apps from being saved on SD cards, and then failing to disclose those facts to consumers. (SAC ¶¶ 22, 25, 30, 37-42, 72, 82 (explaining how LG (1) designed its Phones so that user-selected Apps could only be installed onto a small block of internal storage, and how LG (2) prefilled its phones with Apps from its business partners that could not be deleted or transferred to a SD card in order to generate additional profits)); *Maniscalco*, 627 F. Supp. 2d at 500 (finding plaintiffs' allegations that defendants actively sold and marketed machines

---

[8]     Notably, determining whether an omission is material, or "what the average consumer knows or should know" is a question of fact that generally should not be decided at the pleadings stage. *See Nafar*, 2007 WL 1101440, at *8.

they knew were likely to fail pleaded the requisite knowledge and intent under the

NJCFA). Further, Criaris alleges that LG's parent company has been reprimanded

by government authorities for those very practices. (SAC ¶ 45); *See In re*

*Phillips/Magnavox Television Litig.*, 2010 WL 3522787, at *2 (finding plaintiffs'

allegations that "customers have posted complaints on consumer forum boards" to

evidence that defendants telephone manufacturer knowingly concealed their

omissions about their products).

Criaris next alleges that LG had a duty to inform consumers of the true

nature of its Phones based on, *inter alia*, (1) its "superior, and often, exclusive

knowledge" of the products and of its relationships with its business partners, (2)

LG's "earlier representations" about its products' storage capabilities, and because

(3) LG knew that consumers "could not reasonably [] expect[]" to discover such

information prior to their purchase. (SAC ¶¶ 36, 38, 46, 76); *see Nafar*, 2007 WL

1101440, at *7 (explaining that where the fact at issue is "not common knowledge,

and [] the average consumer would consider such information material to their

decision to purchase such services, [d]efendant is required to provide these facts to

consumers in order to avoid a fraud action."); *Francis E. Parker Mem'l Home,*

*Inc.*, 945 F. Supp. 2d at 560 ("New Jersey law is clear that a duty to disclose is

implied where such disclosure is necessary to make a previous statement true.")

(citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir.1993)).

Finally, Criaris sufficiently alleges that LG intended that consumers rely on its omissions so that it could "increase its profits," "appease its business partners," and promote its own brand. (SAC ¶¶ 38-39.) Indeed, Criaris details how LG contracts with—and thus benefits from—"third parties to include certain Apps on every LG Phone," and how "LG has specific employees dedicated to making deals for 'pre-installed'" Apps, as well as "'teams for testing and developing' bloatware." (*Id.* ¶¶ 38-42.)[9] These allegations are more than sufficient given that the "heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally." *Harnish*, 931 F. Supp. 2d at 646 (finding that plaintiffs' allegations that defendant "engaged in a pattern and practice of *knowingly and intentionally* making numerous false representations and omissions of material facts, *with the intent to deceive* and fraudulently induce reliance by [p]laintiffs and the members of the [c]lass" to be sufficient) (emphasis in the original); *Glauberzon v. Pella Corp.*, No. CIV.A. 10-5929 JLL, 2011 WL 1337509, at *6 (D.N.J. Apr. 7, 2011) (Hon. Linares, J.) ("Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'") (quoting *Ashcroft v. Iqbal*, 556 US 662, 686 (2009)); *see also* Fed. R.

---

[9]     Obviously, these affirmative actions by LG further demonstrate that its omissions were knowingly concealed as well.

Civ. P. 9(b).[10]

Accordingly, Criaris adequately pleads his omission claims in this regard as well, and allowing him to file the SAC would not be futile.

### B.    Criaris's Unjust Enrichment Claim is Not Futile.

Next, LG argues that Criaris's unjust enrichment claim is futile because (1) he failed to adequately allege his fraud-based claims, (2) there was no "unlawful or deceptive conduct from which LG [] derived a benefit," and because, (3) Criaris cannot demonstrate a direct relationship existed between him and LG. (Opp. at 14-16.) These arguments fail too.

LG's first two arguments are simply recycled from its attacks on Criaris's fraud claims and fare no better this time around. As explained above, Criaris properly pleads his fraud claims and sufficiently demonstrates that LG engaged in unlawful and/or deceptive conduct by concealing material facts about the storage capacities and capabilities of its Phones. Similarly, Criaris alleges that LG derived a direct benefit from him and the putative class "by receiv[ing]… money belonging

---

[10]    But, even if more specificity were required (it's not), the SAC would readily satisfy such a standard as well. *See, e.g.*, *Mendez*, 2012 WL 1224708, at *13 (holding that plaintiff's allegation that defendants did not inform him that they took affirmative steps to pre-load their rental cars with an e-Tolling device, despite their awareness that he would be charged demonstrated "[d]efendants' intent or knowledge to conceal or omit a material fact" on which plaintiff would rely); *Maniscalco*, 627 F. Supp. 2d at 500 (finding plaintiffs' allegations that defendants actively sold and marketed machines they knew were likely to fail demonstrated the requisite knowledge and intent under the NJCFA).

to Plaintiff and the Class," and that it inequitably profited as a result. (SAC ¶¶ 86-87, 89-90); *see S Pontrelli*, 2014 WL 4105417, at *17 ("To establish a claim for unjust enrichment, [p]laintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust.") (citation omitted). Nothing more need be pleaded.

Also contrary to LG's assertions, "[t]he requirement that a direct relationship between plaintiff and defendant [need] be established does not preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer." *Lynch v. Tropicana Prods., Inc.*, No. 2:11-CV-07382 DMC, 2013 WL 2645050, at *10 (D.N.J. June 12, 2013) (citation omitted). Indeed, if that were the case, a "defendant [could] insulate [itself] from liability" so long as the product was sold by someone else. *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp.2d 192, 200 (D.N.J. 2012). Thus, to avoid such result, courts in this District make "a distinction [] between defendants who were alleged to [] misrepresent[] the product at the heart of the litigation and defendants who [a]re innocent third parties". *Lynch*, 2013 WL 2645050, at *10.

For example, in *Stewart*, the plaintiff asserted an unjust enrichment claim against the defendant drink manufacturers, alleging that they had fraudulently misrepresented their products as "all-natural." 877 F. Supp. 2d at 200. In response,

the defendants argued that they could not be held liable because the plaintiffs purchased the products from a non-party reseller and thus, had not actually "conferred a benefit upon [them.]" *Id.* at 195. The court disagreed, holding that, as in this case, the plaintiffs had "clearly asserted" an unjust enrichment claim by alleging that defendants "received funds that they [] otherwise would not have…as a result of [defendants'] fraudulent conduct." *Id.* at 201; *see also Lynch*, 2013 WL 2645050, at *10 (refusing to dismiss an unjust enrichment claim where plaintiff could plausibly demonstrate (after a period of discovery) that the retail sales increased as a result of defendants' misrepresentations).

As in *Stewart* and *Lynch*, because Criaris alleges that LG intentionally failed to disclose material information to consumers in order to generate sales, and that he purchased a LG Phone as a result of those omissions—thus conferring a benefit on LG (SAC ¶¶ 86-90)—Criaris adequately pleads his unjust enrichment claim.

## C. Criaris has Standing to Pursue Claims on Behalf of Other Individuals Who Purchased Materially Identical LG Phones.

For its final argument, LG contends that Criaris lacks standing to pursue claims related to the other seven models of LG Phones because he didn't personally purchase them. (Opp. at 17-19.)[11] Once again, LG is incorrect. It is

---

[11]     LG asserts two additional arguments in regards to Criaris's standing. First, it claims that Criaris does not have standing to represent the putative class because "he has not suffered an injury in fact" or "stated a valid claim." (Opp. at 17.) This argument fails for the same reasons addressed above. Second, citing the Third

well-settled that a named plaintiff may represent "a class suffering injuries distinct

from their own as long as they resulted from the same policy or practice of the

defendant." *Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582 DMC JBC,

2013 WL 6047556, at *5 (D.N.J. Nov. 12, 2013) (rejecting defendants' argument

that the plaintiff did not have standing to represent people who purchased "the

innumerable other types of vehicle/wheel/tire pairings that they did not purchase

themselves") (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d.

Cir.1994)); *see also In re Gerber Probiotic Sales Practices Litig.,* No. CIV.A. 12-

835 JLL, 2014 WL 5092920, at *5-6 (D.N.J. Oct. 10, 2014) (Hon. Linares, J.)

(rejecting defendants' argument that plaintiff did not have standing to assert claims

for products they did not personally purchase where plaintiff alleged that the

products and misrepresentations were "closely related").

Here, as Criaris specifically alleges that he suffered an injury as a result of

LG's failure to disclose the true storage capabilities of its Optimus L9 Phone and

---

Circuit's opinion in *McNair v. Synapse Grp.*, 672 F.3d 213 (3d Cir. 2012), LG
argues that Criaris does not have standing to seek injunctive relief on behalf of
himself or the class because he hasn't alleged that he will personally suffer any
future injury. (Opp. at 17.) Criaris respectfully disagrees with that holding. As
courts in this District have recognized, this would effectively "preclude[]
injunctive relief claims in misrepresentation-related consumer class actions
adjudicated in federal court," *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447
FLW, 2012 WL 3278917, at *15 (D.N.J. Aug. 9, 2012), and run contrary to the
purpose of the NJCFA. *See Harnish*, 931 F.Supp.2d at 653 (recognizing "the
history of the NJCFA [as] one of constant expansion of consumer protection" with
"broad" reach).

that the omissions regarding "the [other seven] LG phones are substantially the same, are omitted in a nearly identical manner, and harm consumers in a substantially similar way" (SAC ¶ 1, fn. 2), he has more than sufficiently demonstrated his standing to represent class members who purchased different but "closely related" Phones. *See In re Gerber Probiotic Sales Prac. Litig.*, 2014 WL 5092920, at *5-6. And, even if LG could successfully challenge Criaris's adequacy to represent the class based upon these supposed differences (it can't), such an argument is more appropriately made in opposition to class certification than at the pleadings stage. *See Luppino*, 2013 WL 6047556, at *5 (explaining that "it would be premature to determine the standing issue at this time as to product combinations [p]laintiffs did not purchase or lease themselves").

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order (1) granting leave to file the proposed Second Amended Complaint, and (2) providing such other and further relief that the Court deems reasonable and just.[12]

---

[12]     Given the breadth of LG's arguments here, to the extent the Court grants leave to file the Second Amended Complaint, Plaintiffs further request that LG be prohibited from re-asserting the same arguments in a motion to dismiss the SAC once it is filed.

Respectfully submitted,

**DAVID LIEBLER and GREG CAREY**, individually and on behalf of all others similarly situated,

Dated: January 12, 2015

By: /s/ Stefan L. Coleman
     One of Plaintiffs' Attorneys

Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Eve-Lynn Rapp*
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *pro hac vice*

22

## <u>CERTIFICATE OF SERVICE</u>

      I, Stefan Coleman, an attorney, hereby certify that on January 12, 2015, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on all counsel of record.

                                     /s/ Stefan L. Coleman