NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LIEBLER and GREG CAREY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC., a Delaware corporation,<br><br>    Defendant. | Civil Action No. 14-cv-03500 (JLL) (JAD)<br><br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Plaintiffs' motion for leave to file a second amended complaint. (ECF No. 29). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE**.

**I.  BACKGROUND**

    **a.  Relevant Factual Background**

In this putative class action, Plaintiff alleges that Defendant LG Electronics, U.S.A., Inc. ("LG") fraudulently misled (either by misrepresentation or omission, depending on which iteration of the complaint is at issue) consumers regarding the functionality of certain LG-branded cellular telephones. Specifically, Plaintiff alleges that LG markets the phones in question, all of which run the "Android" operating system, (Proposed Second Amended Complaint ("PSAC"), ECF No. 29-2, ¶¶ 1, 14, 19), based, at least in part, on the phones' ability to allow customers to access the

"Google Play" virtual retail store, operated by non-party Google, and to download and utilize a variety of applications ("Apps").  (Id. ¶¶ 14-16).[1]  Plaintiff alleges that LG led consumers to believe (1) that the products in question would have more internal storage space available than they actually did for the purpose of installing various Apps; and (2) that customers would be able to download Apps to their phones and then store those Apps on removable media (e.g., SD Cards) via card readers present on each phone, thereby significantly increasing the number of Apps users would be able to access.  (Id. ¶¶ 17-46).  Plaintiff alleges that the restrictions that LG allegedly placed on its phones'[2] internal memory and ability to transfer Apps to removable media significantly reduced the value of those phones, and that LG's failure to advise consumers of those restrictions constitutes a fraudulent omission.  (See generally id.).

With regard to Plaintiff's allegations concerning the LG phones' reduced internal storage capacity, Plaintiff contends that LG preloads its phones with various Apps, including programs developed by third-party developers.  (Id. ¶ 24).  Such programs, which consumers are unable to delete from their phones, are sometimes pejoratively referred to as "bloatware."  (Id.)  Plaintiff further alleges that other things, such as the Android operating system itself and space that LG has "reserved" for various system functions also significantly reduce the amount of useable storage space on the LG phones.  (Id. ¶¶ 20, 27).  Plaintiff contends that the combined effect of these design decisions is that, unbeknownst to potential consumers, the LG phones in question actually

---

[1] Given this matter's somewhat strange procedural posture (i.e., Plaintiffs' counsel seek to swap out all potential class representatives and most causes of action by way of amendment), and for the purposes of clarity, the Court will cite exclusively to the PSAC when discussing Plaintiffs' factual allegations.

[2] While proposed Plaintiff Michael Criaris purchased only the LG Optimus L9 phone, he seeks to represent a class of consumers who purchased any of the following products:  the Optimus L9, Optimus L7, Optimus F7, Optimus F3, Lucid2, Escape, Motion 4G, and L35G.  (Id. ¶ 1, n.2). Plaintiff alleges that LG's actionable omissions regarding each of those models were "nearly identical." (Id.).

2

have significantly less storage space than advertised by LG and/or reasonably anticipated by consumers. (See, e.g., ¶¶ 23-28). By way of example, Plaintiff alleges that LG's website represents that the phone he purchased, the Optimus L9, contains a total of 4 gigabytes of internal storage. (Id. ¶ 26). When consumers first turn on the Optimus L9, however, they learn that only 1.66 gigabytes of that storage space is actually available for their use, with the remaining 2.34 gigabytes already filled in the manner described above. (Id.). In short, Plaintiff alleges that more than 60% of the Optimus L9's advertised storage space is unavailable from the outset, something that consumers have no way of knowing until after they purchase and begin using the phone. (See id. ¶¶ 28, 47-50). Plaintiff contends that LG's alleged failure to disclose this information to potential consumers constitutes fraud by omission. (Id. ¶¶ 60-70).

Plaintiff further alleges that LG has compounded the internal storage space issue by designing its phones in a manner that makes it impossible for users to transfer Apps from their phones' internal storage to removable media. (Id. ¶¶ 29-37). Specifically, Plaintiff contends that, although each of LG phones in question features a slot capable of utilizing removable media for storage purposes, and that older LG phone models permitted users to transfer their Apps to such media, LG has removed that functionality from certain phones. (Id. ¶¶ 29-37). Plaintiff claims that LG's alleged failure to notify potential consumers of that restriction constitutes an actionable, fraudulent omission. (Id. ¶¶ 71-84).

The bulk of Plaintiff's allegations are generalized, citing to information gleaned from LG's website, various internet articles, owner's manuals for older LG phones, and other sources, but without connecting any of that data to Plaintiff (i.e., what Plaintiff actually saw or how it influenced him). (See id. ¶¶ 13-46). Indeed, Plaintiff's factual allegations regarding his personal experiences with LG are relatively sparse, limited to only five paragraphs of the PSAC. (Id. ¶¶

3

47-51). Specifically, Plaintiff contends that, prior to purchasing LG's Optimus L9, he read the packaging for that phone at a T-Mobile USA retail store, and that the packaging failed to disclose the limitations on the phone's internal storage space or the functionality of its removable media slot. (Id. at ¶ 47). Plaintiff did not mention what information the packaging did convey. (Id. ¶¶47-51). By Plaintiff's own allegations, it appears that the only information he reviewed regarding the Optimus L9 prior to purchasing that device is the information set forth on the product's packaging. (Id.). In support of its opposition to Plaintiff's motion for leave to amend, LG submitted what it represented to be the complete product packaging for both the pre-paid and post-paid models of the Optimus L9 (i.e., the PSAC does not specify which model Plaintiff allegedly purchased). (ECF Nos. 32-2, 32-3). Plaintiff has not challenged the completeness of those materials, or otherwise suggested that they differ from what he reviewed prior to purchasing the Optimus L9. (See generally, Pl.'s Reply, ECF No. 40). The packaging in question does not contain any mention of either (1) the phone's internal storage space; or (2) whether the phone features any capability to utilize SD cards or other removable media. (ECF Nos. 32-2, 32-3). Indeed, while the packaging indicates that the phone comes with "Preloaded Apps", it does not provide any indication that consumers can utilize the phone to download additional Apps. (Id.).

    b.    **Procedural History**

Plaintiff David Liebler, a Michigan resident, commenced this matter on June 2, 2014 by filing a Complaint alleging that LG's business practices regarding the marketing and sale of certain of its cellular phones constituted a violation of New Jersey's Consumer Fraud Act ("NJCFA") N.J. Stat. §§ 56, et seq, (Compl. ECF No. 1, ¶¶ 50-58) (alleging that LG has engaged in deceptive practices and made both fraudulent misrepresentations and omissions), and served as the basis of common law claims for fraud in the inducement, (Id. ¶¶ 59-72), negligent misrepresentation, (Id.

¶¶ 73-79), breach of contract, (Id. ¶¶ 80-86), and unjust enrichment. (Id. ¶¶ 87-94).  On July 15, 2014, Plaintiff Liebler filed an Amended Complaint that, among other things, added Greg Carey, a resident of Kanas, as a named plaintiff and potential class representative. (Am Compl., ECF No. 4, ¶ 8).  Plaintiffs Liebler and Carey also added various factual allegations, converted the breach of contract claim into a claim for "breach of express warranties", (id. ¶¶ 88-98), and reiterated the other causes of action pled in the original Complaint.  (Id. ¶¶ 58-105).

On September 15, 2014, Defendant LG filed a Motion to Dismiss the Amended Complaint in its entirety.  (Def. Mot. to Dismiss, ECF No. 17).  On September 31, 2014, before Judge Linares had an opportunity to address that motion, Plaintiffs filed a motion for leave to file second amended complaint.  (ECF No. 29).  Ostensibly aimed at addressing the alleged shortcomings that Defendant identified in its motion to dismiss, Plaintiffs' PSAC, (ECF No. 29-2), would significantly alter the substance of this litigation.  First, that proposed pleading would drop both David Liebler and Greg Carey and replace them with a new potential class representative:  Michael Criaris. (See generally, PSAC, ECF No. 29-2).  Moreover, in addition to revising certain factual allegations, the PSAC would:  (1) modify the NJCFA claim so that it seeks relief solely under a "fraud by omission" theory, thereby eliminating references to Defendant's alleged "deceptive practices" and "misrepresentations"; (compare Am. Compl., ECF No. 4, ¶¶ 58-66 with PSAC, ECF No. 29-2, ¶¶ 60-70); (2) replace the common claw claim for "fraud in the inducement" with a common law claim for "fraud by omission"; (compare Am. Compl., ECF No. 4, ¶¶ 67-80 with PSAC, ECF No. 29-2, ¶¶ 71-84); and (3) eliminate the common law claims for both "negligent misrepresentation" and "breach of express warranties." (Compare Am. Compl., ECF No. 4, ¶¶ 58-105 with PSAC, ECF No. 29-2, ¶¶ 60-91).  Defendant opposes Plaintiff's motion, arguing that Plaintiff's PSAC

5

would be vulnerable to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and, therefore, Plaintiff's proposed amendment would be futile. (Def. Opp., ECF No. 32, at 4-19).

## II. LEGAL ANALYSIS

### a. The Legal Standard Governing Motions for Leave to Amend

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the court to look favorably on requests to amend."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No. 11-1656 (JLL), 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F. 3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204

(3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

As noted above, Defendant challenges Plaintiff's proposed amended pleading on futility grounds.[3] A proposed amendment "'is futile if the amended complaint would not survive a motion to dismiss.'" County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (U.S. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Court notes that Defendant bears the burden of establishing that Plaintiff's proposed amendments are futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to

---

[3] Defendant does not argue, and the Court cannot find based on its review of the record, that Plaintiff's PSAC is the product of any undue delay or bad faith motive, or that the pleading would cause Defendant any legitimate prejudice.

7

amend is improper.'" Schiano v. MBNA, 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *45 (D.N.J. Feb. 11, 2013) (internal citations omitted). Against this backdrop, the Court will consider each of Plaintiff's proposed amendments in turn.

### b. **Plaintiff's Proposed Claim Under the NJCFA**

In the first count of the PSAC, proposed Plaintiff Criaris alleges that Defendant violated the NJCFA by failing to advise consumers regarding limitations on certain phones' internal storage and capacity to fully utilize removable storage media. (See PSAC, ECF No. 29-2, ¶ 67).

The Hon. Jose L. Linares, U.S.D.J., who is presiding over this matter, previously addressed the legal standards applicable on such a claim:

> To establish a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1 et seq., a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741, 749 (N.J. 2009) (quoting Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 929 A.2d 1076, 1086 (N.J. 2007)). Where a NJCFA claim is based on an omission, to establish unlawful conduct, the plaintiff also must show that "the defendant (1) knowingly concealed (2) a material fact (3) with the intention that [the] plaintiff rely upon the concealment." Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418, 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003); see also Bosland, 964 A.2d at 749. Once the plaintiff in an omission case has established unlawful conduct, "he must also prove that the omission proximately caused any loss he may have suffered." Blackfin, 815 A.2d at 542. Unlike having to establish reliance or but-for causation, however, "the NJCFA does not require [*43] that the allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause." Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 304 (D.N.J. 2009); see also Zorba Contractors, Inc. v. Housing Auth., 362 N.J. Super. 124, 827 A.2d 313, 321 (N.J. Super. Ct. App. Div. 2003) ("The only noteworthy difference between the causes of action is that common law fraud requires proof of reliance while consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss.") (internal quotations omitted). Finally, "once a plaintiff has established a significant relationship between the defendant's

8

> practices and the plaintiff's ascertainable losses it becomes the defendant's responsibility to isolate particular losses which do not have the required causal connection." Roberts v. Cowgill, 316 N.J. Super. 33, 719 A.2d 668, 673 (N.J. Super. Ct. App. Div. 1998).

Demmick v. Cellco P'ship, No. 06-2163 (JLL), 2010 U.S. Dist. LEXIS 94041, *42-43 (D.N.J. Sept. 8, 2010) (citations in original). Moreover, claims under the NJCFA must be pled with the factual specificity required under Federal Rule of Civil Procedure 9(b). See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); Perrotta v. LG Elecs. USA, Inc., No. 12-246 (JLL), 2013 U.S. Dist. LEXIS 115958, *29 (D.N.J. Aug. 15, 2013) (Linares, J.) ("In addition, claims under the NJCFA must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.").

Mr. Criaris has alleged very little factual information concerning what he believed about the Optimus L9 prior to purchasing that device, let alone how he developed such beliefs. Indeed, all of Criaris's allegations on that point are contained within a single paragraph. (See PSAC, ECF No. 29-2, ¶ 47). Mr. Criaris alleges that, while in a retail store, he reviewed the packaging for the phone and then purchased it. (Id.). While the PSAC contains allegations concerning various LG products, and derived from multiple sources including websites and instruction manuals for older LG phones, Plaintiff does not allege that he reviewed (or was even aware of) any of those materials, or that they influenced his understanding of the Optimus L9's capabilities (let alone how they did so). (See id. ¶¶ 13-46). Indeed, Mr. Criaris does not allege that he obtained information about that phone from any source other than the device's packaging. (See generally id.). Plaintiff's fraud claims will necessarily turn on what LG led him to believe (through representation or omission) regarding the Optimus L9 prior to his purchase, not what additional information Plaintiff and his counsel were able to uncover afterward. For the purposes of this analysis, and based on Mr. Criaris's allegations, the Court must therefore treat the Optimus L9's packaging as the entire universe of information that Mr. Criaris reviewed prior to purchasing that product.

In support of his NJCFA claim, Plaintiff alleges that "Defendant's continued representations that the LG Phones had unencumbered internal storage and that the phones' external storage could be expanded 'up to 32GB' . . . demonstrates Defendant's intent to conceal or omit material facts by failing to inform consumer of what they were actually getting." (Id. ¶ 66). Plaintiff further alleges that "Defendant's omissions regarding the capacity of its LG Phones' internal storage and the limitations it placed on the LG Phones' external storage are likely to mislead a reasonable consumer who is acting reasonably under the circumstances." (Id. ¶ 67). Those allegations actually highlight the basic factual information missing from the PSAC. Plaintiff has not alleged any facts suggesting that he had any pre-purchase information regarding either (1) the internal storage capacity of the Optimus L9; or (2) the Optimus L9's ability to utilize removable storage media, let alone that LG made "continued representations" regarding those issues.

In connection with Plaintiff's motion, LG has submitted what it represents to be the packaging materials for the Optimus L9. (ECF Nos. 32-2, 32-3).[4] Mr. Criaris has not challenged the authenticity or completeness of those materials, or suggested that they differ from what he reviewed prior to purchasing his phone. (See generally, Pl.'s Reply, ECF No. 40). As the Court is essentially conducting a Rule 12(b)(6) analysis when considering the potential futility of Plaintiff's PSAC, and Mr. Criaris specifically references the packaging materials as a basis for his claims in that proposed pleading, the Court may consider them in the context of this motion. See, e.g., Small v. Lanigan, No. 11-2565 (AET), 2012 U.S. Dist. LEXIS 36109, *4 (D.N.J. Mar. 15, 2012) ("In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may

---

[4] LG has submitted the packaging materials for the both the pre-paid and post-paid versions of that phone, as the PSAC does not specify which model Plaintiff purchased.

consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record.") (citing Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003)). Put simply, those packaging materials do not convey any information regarding either (1) the phone's internal storage space; or (2) whether the phone is equipped to utilize SD cards or other removable media. (ECF Nos. 32-2, 32-3). Moreover, and even more fundamentally, the packaging does not provide any indication that the Optimus L9 is capable of downloading new Apps at all. (Id.) (the packaging states that the phone features "Preloaded Apps", but does not suggest that the phone is capable of downloading additional Apps). As Mr. Criaris's allegations, taken together, establish that the packaging was his sole source of information regarding the Optimus L9 prior to purchase, the only possible inference that the Court can draw from his pleading is that Plaintiff bought the phone with no basis for his expectations that he would be able to utilize the phone to obtain additional Apps, let alone for specific expectations regarding the phone's internal storage or that the phone even had the capacity to utilize removable media. In turn, if LG's packaging did not make any representations regarding the phone's ability to download new Apps, internal storage or ability to utilize removable media, then its alleged failure to advise Plaintiff of limitations on those features could not possibly have misled him. As the New Jersey Supreme Court has made clear, "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (N.J. 1994).

Put another way, without alleging factual information concerning what he believed about the Optimus L9 prior to purchasing that device (or how LG contributed to those beliefs, through omissions or otherwise), Plaintiff has not pled facts sufficient to establish that Defendant's alleged failure to disclose the internal storage / removable storage limitations described above was

"material" to the transaction. Plaintiff has, therefore, failed to plead his NJCFA claim with the degree of factual detail necessary to survive a challenge under Federal Rule of Civil Procedure 8(a), let alone with the increased level of particularity required under Rule 9(b). Specifically, if Plaintiff did not have <u>any</u> information regarding the features in question (from LG or otherwise) – even that they <u>existed</u> - how could LG's failure to provide information regarding specific limitations on those features have been material to Plaintiff's purchasing decision? <u>See</u> <u>Mango v. Pierce-Coombs</u>, 370 N.J. Super. 239, 251 (App. Div. 2004) (information is "material" for purposes of the NJCFA if "(a) a reasonable person would attach importance to its existence in determining a choice of action . . . or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."); <u>Coburn v. J.C.C. Constr. Corp.</u>, No. A-0149-07T1, 2008 N.J. Super. Unpub. LEXIS 292, *8 (N.J. Super. App. Div. Nov. 19, 2008) ("To establish a violation of the CFA based on non-disclosure, a plaintiff must prove that the defendant knowingly omitted a material fact intending the buyer <u>to rely on facts known</u> without considering the information withheld.") (emphasis added). Similarly, Plaintiff's failure to allege any facts regarding why he believed that the Optimus L9 was even capable of downloading new Apps would also appear to be fatal to his proposed amendment. As noted, Plaintiff has alleged that limitations on the phone's ability to download and install new Apps form the basis for his fraud claims. (PSAC, ECF No. 29-2, ¶¶ 47-51, 60-84)).

      Taking Plaintiff's allegations together, Plaintiff has simply not pled facts sufficient to establish how the alleged omissions at issue in this case were material to his decision to purchase the Optimus L9. These shortcomings in Plaintiff's factual allegations are fatal to his proposed omission claim under the NJCFA. <u>Demmick</u>, 2010 U.S. Dist. LEXIS 94041 at *42 (noting that,

to establish an "unlawful act" under the NJCFA in an omission case, a plaintiff must establish that the alleged omission concerned a "material fact" and that the defendant intended for the plaintiff to rely on that omission). The Court clarifies that it has not determined that Plaintiff will be forever unable to plead facts sufficient to establish a claim under the NJCFA, just that Plaintiff has not done so in the PSAC. Indeed, if Plaintiff alleges facts underlying his pre-purchase beliefs (1) that the Optimus L9 was capable of downloading new Apps; (2) the Optimus L9 had internal storage capabilities; and (3) the Optimus L9 was capable of utilizing removable storage media, the Court will be inclined to permit him to file an amended pleading including an "omission" claim under the NJCFA.[5]

### c. Plaintiff's Proposed Common Law Claim for Fraud by Omission

Mr. Criaris's proposed common law claim for fraud by omission fails for essentially the same reasons as his claim under the NJCFA. "To state a claim for [common law] fraud under New Jersey law, a plaintiff must establish: (1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or knowing the omission to be material; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." GKE Enters., LLC v. Ford Motor Credit Co. LLC USA, No.: 09-4656(JLL), 2010 U.S. Dist. LEXIS 53714, *11 (D.N.J. May 26, 2010) (Linares, J) (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)). As with his proposed NJCFA claim, Plaintiff has not pled facts sufficient to establish that Defendant's alleged omissions were "material" to his decision to purchase the LG Optimus L9. Similarly, Plaintiff has not alleged facts suggesting that he reasonably relied upon those omissions (i.e., if Plaintiff had no information

---

[5] The Court stresses that such factual allegations must pertain to what Plaintiff knew about the Optimus L9 prior to purchasing it.

regarding the features in question prior to his purchase, he could not have reasonably relied upon LG's failure to disclose limitations on those features). Plaintiff has therefore failed to plead facts sufficient to create a plausible entitlement to relief on his proposed common law fraud claim.

### d. Plaintiff's Proposed Common Law Claim for Unjust Enrichment

Finally, Plaintiff's proposed claim for unjust enrichment fails as a matter of law. Judge Linares has previously found, in no uncertain terms, that "New Jersey does not recognize unjust enrichment as an independent tort cause of action." In re Gerber Probiotic Sales Practices Litig., 2014 U.S. Dist. LEXIS 44810 at *41-42 (D.N.J. March 31, 2014) (citing Castro v. NYT Television, 370 N.J. Super. 282, 299, 851 A.2d 88 (N.J. App. Div. 2004)). That is precisely how Plaintiff seeks to utilize the claim. (See PSAC, ECF No. 29-2, ¶¶ 89-91) (stating that Plaintiff has "suffered financial loss" from and seeks relief in connection with Defendant's "unlawful and deceptive conduct described herein" (i.e., the allegedly fraudulent omissions)). Plaintiff has essentially just recast his fraud claim as one for unjust enrichment.

Indeed, an examination of the full set of elements for an unjust enrichment claim demonstrates that the cause of action is simply not applicable here, as that cause of action is intended to address matters of contract / quasi-contract. To state such a claim under New Jersey law, "a Plaintiff must establish that the 'defendant received a benefit and that retention of that benefit without payment would be unjust' and that Plaintiff 'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" Id. at *41 (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994)). As the PSAC does not contain any facts that might "support a plausible unjust enrichment claim sounding in contract or quasi-contract," Plaintiff's proposed claim for unjust enrichment fails. Id. at *43.

### III.     CONCLUSION

Based on the foregoing, Plaintiffs' motion for leave to file a Second Amended Complaint, (ECF No. 29), is **DENIED WITHOUT PREJUDICE**. An appropriate form of Order accompanies this Opinion.

**s/ Joseph A. Dickson**
**Joseph A. Dickson**
**United States Magistrate Judge**

Cc:  Hon. Jose L. Linares, U.S.D.J.